Argued and submitted November 27, 1989, resubmitted In Banc January 10, affirmed February 14, reconsideration denied April 18, petition for review denied May 22, 1990

(310 Or 71)

In the Matter of
William James Stevens, a Child.

## STATE ex rel JUVENILE DEPARTMENT OF LANE COUNTY et al,

*Respondents,*

*v.*

## STEVENS,
aka O'Brien,

*Appellant.*

In the Matter of
William James Stevens, a Child.

## STATE ex rel JUVENILE DEPARTMENT OF LANE COUNTY et al,

*Respondents,*

*v.*

## STEVENS,

*Appellant.*

(86-655; CA A60866 (Control))

In the Matter of
Ronald Joseph Stevens, a Child.

## STATE ex rel JUVENILE DEPARTMENT OF LANE COUNTY et al,

*Respondents,*

*v.*

## STEVENS,
aka O'Brien,

*Appellant.*

In the Matter of
Ronald Joseph Stevens, a Child.

## STATE ex rel JUVENILE DEPARTMENT OF LANE COUNTY et al,

*Respondents,*

*v.*

## STEVENS,

*Appellant.*

(83-469; CA A60893)

In the Matter of
Jamie Ian Stevens-Johnston, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF LANE COUNTY et al,
*Respondents,*

*v.*

STEVENS,
aka O'Brien,
*Apellant.*

In the Matter of
Jamie Ian Stevens-Johnston, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF LANE COUNTY et al,
*Respondents,*

*v.*

JOHNSTON,
*Appellant.*

(88-113; CA A60894)
(Cases Consolidated)

786 P2d 1296

Susan A. Schmerer, Eugene, argued the cause and filed the brief for appellant Virginia Jaye Stevens.

Diane M. DePaolis, Eugene, argued the cause for appellant Martin Mitchell Stevens. With her on the brief was DePaolis, Evans, Shepard & Vallerand, Eugene.

Katherine M. Blaser, Eugene, argued the cause and filed the brief for appellant Sandy John Johnston.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance for other respondents.

GRABER, J.

Newman, J., dissenting.

## GRABER, J.

Three parents appeal the trial court's judgment terminating their rights to three children. All of the children have the same mother. We affirm without further discussion on all issues involving the mother and the father of the youngest child. We write only to discuss constitutional arguments that Martin Stevens, the father of the two older children, raises. We affirm the termination of his rights.

At the time of trial, Stevens was in prison in Washington on a federal conviction. Because he was indigent, the court appointed an attorney to represent him in this proceeding. However, it refused to order the state to pay the $2,500 to $3,700 that it would cost to bring him to Eugene and hold him in the Lane County Jail for the duration of the trial. Instead, Stevens testified by telephone. He argues that the court's refusal to pay for his appearance in person violated several state and federal constitutional provisions.

■ Stevens first asserts that he had a right, under Article I, section 11, of the Oregon Constitution, to receive effective assistance of counsel and to confront the witnesses face to face. He could exercise those rights, he argues, only if he were present. The problem with that argument is that Article I, section 11, applies "[i]n all criminal prosecutions"; a proceeding to terminate parental rights is not a criminal prosecution. It is true, as the Supreme Court has noted, that such a proceeding is "one of the most drastic actions the state can take against its inhabitants" and that the consequences of denial of counsel "are as serious as they are in most criminal prosecutions." *State v. Jamison,* 251 Or 114, 117-18, 444 P2d 15, 444 P2d 1005 (1968). The importance of a termination proceeding does not, however, make it a criminal prosecution. Article I, section 11, does not grant rights that apply in termination cases.[1]

■ Next, Stevens claims that the court's action denied him due process of law under the Fourteenth Amendment. To

---

[1] Stevens also cites Article I, section 10, as a source of the rights that he seeks. He does not explain how the failure to bring him to Eugene denied him a remedy in the due course of law for an injury done to him. *See, e.g., Hale v. Port of Portland,* 308 Or 508, 517-24, 783 P2d 506 (1989). Neither Article I, section 10, nor any other provision of the Oregon Constitution is analogous to the Due Process Clause of the Fourteenth Amendment. *State v. Clark,* 291 Or 231, 235 n 4, 630 P2d 810 (1981).

the degree that he bases his claim on the rights that the Due Process Clause incorporates from the Fifth and Sixth Amendments, his argument has the same infirmity as does his claim under Article I, section 11. Those rights apply only in criminal prosecutions. It may be that similar rights are available in termination cases, but, if so, the reason is that fundamental fairness requires them in a particular case or category of cases. In *Lassiter v. Department of Social Services,* 452 US 18, 24-27, 101 S Ct 2153, 68 L Ed 2d 640 (1981), the Supreme Court recognized that a termination case threatens the parent with "a unique kind of deprivation" and that, as a result, the parent has a commanding interest in the justice and accuracy of the decision. The Court held, nevertheless, that fundamental fairness does not require the appointment of counsel for a parent in all termination cases.

In order to determine what due process requires before the government may deprive a person of an important right, the Supreme Court directs us to balance the interests that it identified in *Mathews v. Eldridge,* 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976):

> "[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and *the probable value, if any, of additional or substitute procedural safeguards;* and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Emphasis supplied).

*See Lassiter v. Department of Social Services, supra,* 452 US at 27. In *Babcock v. Employment Division,* 72 Or App 486, 491, 696 P2d 19 (1985), we applied the criteria of *Mathews* in considering whether a telephone hearing in an unemployment compensation case violated due process. We concluded that it did not. We reasoned that the claimant had an opportunity to cross-examine witnesses, personal appearances would not materially reduce the risk of erroneous decisions, and the Employment Division had a strong interest in telephone hearings as a fair and efficient way to conserve its limited resources.

We reach a similar conclusion in this case. Stevens' interest in his parental rights is undoubtedly great. For that

reason, he received significant procedural protections. The state was required to prove the facts supporting its petition by clear and convincing evidence, ORS 419.525(3), at a trial at which Stevens was represented by appointed counsel. Our review of the decision against him is *de novo.* ORS 419.561(4). Stevens testified by telephone[2] and was able to consult with his counsel in the same way. His testimony followed that of the adverse witnesses and responded to it point by point, and his counsel was able to cross-examine the adverse witnesses meaningfully. Those facts suggest that he was able *effectively* to consult with counsel. Indeed, he does not claim that any specific portion of the trial was affected by his absence or that his inability to consult with counsel in person hampered any specific portion of trial preparation or strategy. In view of the extensive safeguards that Stevens did enjoy, we cannot say that the probable value of his physical presence in assuring an accurate and just decision was great. On the other hand, the only interest that the state asserts is financial. In contrast to *Babcock v. Employment Division, supra,* the record does not show that that interest extends beyond this particular case, to an extensive governmental program.

We must balance what would be at best a marginal improvement in the factfinding process against a somewhat less marginal governmental interest. In *In Re Darrow,* 32 Wash App 803, 649 P2d 858 (1982), the Washington Court of Appeals held that it was not a violation of due process for the state to refuse to pay to transport a prisoner from Arizona to Washington for a termination hearing. In that case the prisoner was represented by counsel but did not testify, by telephone or otherwise. We need not decide whether we would agree with the Washington court on identical facts. We do hold, however, that on the facts of this case the trial court did not deny Stevens due process when it refused to require the state to pay for his transfer to Eugene in order to participate in the trial.[3]

The dissent's approach has two flaws. First, it

---

[2] In *State ex rel Juv. Dept. v. Gates,* 86 Or App 631, 740 P2d 217 (1987), *rev den* 305 Or 45 (1988), we held, in a termination case, that taking the testimony of expert witnesses by telephone over the objection of a party violated ORS 45.010 and ORS 45.040. Stevens does not make a statutory challenge to taking his testimony by telephone.

[3] We affirm on the merits of Stevens' appeal.

assumes, as a matter of fact, that the trial court's inability to evaluate Stevens' demeanor in person was important here, because "[a] key witness adverse to father was the child's mother, who did appear in person." 100 Or App 489. Testimony from witnesses, other than mother, during the lengthy trial bore on Stevens' fitness. Most significantly, Stevens admitted many of the key facts about which mother testified, including his participation in the manufacture of methamphetamines, his past abuse of drugs and alcohol, and his long criminal history; most recently, he had pled guilty to a federal charge of manufacturing marijuana. He admitted that the people with whom he was associating before his incarceration were dangerous to him and his family. Moreover, the trial court clearly viewed mother's testimony with caution, as shown by its termination of her parental rights. Even if we, on de novo review, accepted Stevens' version where it conflicted with mother's, we would still affirm the trial court's decision. On this record, it is not likely that his absence was in fact critical.

Second, the dissent blurs the distinction between two different considerations: "the private interest that will be affected" by the hearing and "the probable value, if any, of additional * * * safeguards" in the procedure. Mathews v. Eldridge, supra, 424 US at 335. The importance of Stevens' interest does not necessarily translate into added value for the requested additional procedure. The dissent's emphasis on his interest as the controlling factor causes it to overlook the narrowness of our inquiry. We must decide whether Stevens was afforded a full and fair opportunity to present evidence in his behalf and to rebut evidence offered against him and must decide only whether the incremental safeguard of personal appearance is not merely desirable, but constitutionally required. In this case, Stevens received that full and fair opportunity, and the denial of his request to be brought to the hearing at the state's expense did not deny him due process.

Affirmed.

**NEWMAN, J.,** dissenting.

The majority errs when it holds that due process under the Fourteenth Amendment does not require the state to pay $2,500 to $3,700 to bring father from the Washington State Penitentiary to the Lane County Jail to defend his

parental rights in person. The majority quotes the *Mathews v. Eldridge,* 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976), three-part balancing test, 100 Or App at 486, but misapplies it and reaches a wrong, and fundamentally unfair, result.

As to the privacy interest at stake, father has a fundamental liberty interest as a parent. *Stanley v. Illinois,* 405 US 645, 92 S Ct 1208, 31 L Ed 2d 551 (1972). The majority opinion correctly acknowledges that "[father's] interest in his parental rights is undoubtedly great." 100 Or App at 486. That fundamental liberty interest was *not* present in *Babock v. Employment Division,* 72 Or App 486, 696 P2d 19 (1985), an unemployment compensation case to which the majority gives so much weight. 100 Or App at 486.

As to the risk of erroneous deprivation of father's parental interest, the majority asserts that "we cannot say that the probable value of [father's] physical presence in assuring an accurate and just decision was great[,]" 100 Or App at 487, and calls father's presence "at best a marginal improvement in the factfinding process." 100 Or App at 487. The majority's conclusions are wrong. The purpose of a termination proceeding is to determine a person's fitness to continue as a parent. This is one of the most difficult tasks that a court can undertake. As stated by the court, in *State v. Jamison,* 251 Or 114, 117, 444 P2d 1005 (1968):

> "The permanent termination of parental rights is one of the most drastic actions the state can take against its inhabitants."

To minimize the risk of error, the court must be able to determine as accurately as possible what kind of person the parent is. Demeanor has an importance that it does not have in other kinds of proceedings, such as an unemployment compensation hearing.

Because the state did not provide the expenses for father to appear, the court could not evaluate his demeanor. A key witness adverse to father was the child's mother, who did appear in person. Although father admitted certain "key facts about which mother testified," 100 Or App at 488, he also contradicted her testimony on other "key facts," including her allegations of physical abuse and various criminal charges. Mother's parental rights were also at issue, but that only

heightens the need for the court to be able to weigh father's credibility against hers. The majority, therefore, seriously underestimates the probable value of father's presence in court.

The majority asserts that father failed to point to a "specific portion of the trial [that] was affected by his absence[.]" 100 Or App at 487. He does not need to, because his absence affected the entire proceeding. The majority fails to evaluate correctly the importance to the trial court of observing father when determining his credibility and parental fitness, as well as the importance to father of an opportunity to be at his counsel's side and to face witnesses when they give adverse testimony.

As to the governmental interest, the majority concedes that the state's $2,500 to $3,700 interest is only "financial." 100 Or App at 487. Its interest is weak. Again, this is not an unemployment compensation hearing where, according to the majority, the state has a "strong interest in telephone hearings as a fair and efficient way to conserve its limited resources." 100 Or App at 486.

After identifying and characterizing the three factors that it must balance under *Mathews v. Eldridge, supra,* the majority then strikes an unfair balance. Despite its efforts at the end of the opinion to explain what it has done, 100 Or App at 488, in actuality it has failed to place on the scale the great weight of father's fundamental interest in his parental rights. Contrary to *Mathews,* the majority weighs *two* factors only—*not three.* As it earlier stated:

> "We must balance what would be at best a marginal improvement in the factfinding process against a somewhat less marginal governmental interest." 100 Or App at 487.

I have already emphasized that the majority errs when it evaluates father's presence as only a "marginal improvement in the factfinding process." 100 Or App at 487. It is at least of equal importance that the majority has not placed in the balance at all father's parental interest. If the majority had given that interest proper weight, it could not have reached the result that it did in view of the weak interest of the state.

I dissent.

Joseph, C. J., and Buttler and Rossman, JJ., join in this dissent.