Argued and submitted March 30, reversed and remanded May 18, 2016

In the Matter of J. H. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. E. R.
and J. E. R.,
*Appellants.*

Wasco County Circuit Court J08062;
Petition Number J0806203;
A160556 (Control), A160559

In the Matter of E. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. E. R.
and J. E. R.,
*Appellants.*

Wasco County Circuit Court  J11011;
Petition Number J1101103;
A160557, A160560

In the Matter of G. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. E. R.
and J. E. R.,
*Appellants.*

Wasco County Circuit Court J12013;
Petition Number J1201302;
A160558, A160568

374 P3d 1018

Ginger Fitch argued the cause and filed the brief for appellant J. E. R.

Laura S. Anderson and Laura S. Anderson, LLC, filed the brief for appellant A. E. R.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**FLYNN, J.,**

In this juvenile dependency case, mother and father appeal judgments that changed the permanency plans for their children, J, E, and G, from reunification to adoption. The issue that we address on appeal is whether the juvenile court denied father's statutory right to "participate in hearings," ORS 419B.875(2)(c), when it conducted the final day of a permanency hearing in father's absence, despite the fact that father, who was incarcerated, had secured an order to be transported to the hearing. Father argues that the court's insistence on concluding the hearing despite father's involuntary absence is error that requires reversal because father "had a critical role yet to play" in the presentation of evidence, and because his absence prevented introduction of exhibits that were pertinent to his theory of the case. We agree with father and, therefore, reverse and remand.[1]

The pertinent facts are primarily procedural and undisputed. Father was incarcerated at the time that the trial court asserted jurisdiction over his children and remained incarcerated through the dates of the permanency hearing at issue in this appeal. A permanency hearing began on August 20, 2015, during which the Department of Human Services (DHS) sought to change the permanency plan for the children from reunification to adoption.

Father opposed DHS's effort to change the plan to adoption, contending that DHS could not demonstrate that it had made reasonable efforts to reunify the family. *See* ORS 419B.476(2)(a); *Dept. of Human Services v. R. D.*, 257 Or App 427, 432-33, 307 P3d 487 (2013) (in a permanency hearing, the court will not change the plan from reunification to adoption unless DHS proves both that "(1) DHS made reasonable efforts to make it possible for the child to return home safely *and* (2) the parent has not made sufficient progress for that to occur" (emphasis in original)). Father testified during the first two days of the permanency hearing.

---

[1] Given our conclusion that the judgment must be reversed due to the violation of ORS 419B.875(2)(c), we decline to address father's additional assignments of error and mother's assignment of error, because the record may develop differently on remand in light of this opinion. *See State v. Strye*, 273 Or App 365, 366 n 2, 356 P3d 1165 (2015).

He testified that he had not seen or spoken to his children during the time that he was in prison. He also testified that he had sent seven letters to his children from prison but that the DHS caseworker told him that the letters were not delivered to the children because she deemed them to be inappropriate. Father testified that he believed his letters had been "good letters" that did not say anything inappropriate.

DHS did not offer testimony from the caseworker about the letters, or about any other topic. Indeed, at the start of the hearing, father's counsel informed the court that she had just learned the day before that the parents' caseworker would not be testifying because she "has been terminated or undergone some sort of adverse employment action similar to termination" and that, as a result, father was seeking a continuance and the opportunity to subpoena the former caseworker to testify and to subpoena records from the caseworker. Father's counsel specifically emphasized her need to examine the caseworker's case file, because the documents that DHS had disclosed during discovery did not include copies of father's letters to the children. The DHS lawyer advised that he did not have the case file or copies of the letters with him in court that day, and the court instructed him to provide the letters.

Although the juvenile court refused to postpone the entire hearing, it told the parties that it would allow parents time to obtain the desired additional evidence before concluding the hearing. By the second day of the hearing, the court and the parties had scheduled the final day of the hearing for September 16, 2015, with the understanding that father and mother intended to use the time to subpoena DHS to produce the former caseworker's records and to locate and subpoena the former caseworker to testify. In the intervening weeks, father issued the contemplated subpoena for records, but the court heard and granted a DHS motion to quash father's subpoena of records from the former caseworker's personnel file.

Father obtained a court order directing the county sheriff to transport him "from the Oregon State Penitentiary Correctional Institution to the Wasco County Courthouse no later than 1:00 pm on Wednesday, September 16, 2015."

When the date arrived, however, father had not been transported to the courthouse. Father's counsel reminded the court that "[f]ather hasn't rested" and advised that she "was anticipating probably introducing some evidence through him[.]" She argued that it would be error for the court to proceed without a parent who has requested to attend, adding, "I'm requesting that [f]ather be here personally. It affects my ability to put on his case, specifically, because I needed to consult with him about certain evidence and possibly introduce evidence through him, evidence that I would have to show him, and now I have no way to do that."

The court told counsel, "if you want to put him back on, we can go ahead and do it[,]" and attempted to arrange for father to participate by telephone. When the court was unable to arrange father's participation by telephone, however, it directed the parties to proceed with closing arguments. In closing argument, father's attorney emphasized that it was father's position that DHS had not proven reasonable efforts toward reunifying the family, specifically arguing that "[f]ather wrote seven letters. [There is n]o evidence that they were ever given to the children" and that "[w]e have no efforts to create telephonic visits, Skype visits, or anything of that nature[.]"

Following closing arguments, the juvenile court ruled that DHS proved that it had made the showing necessary to change the permanency plan from reunification to adoption. In explaining its determination that DHS made "reasonable efforts" toward reunifying the family, the juvenile court expressly found that "[f]ather was allowed to write to the children and continues to be allowed to write to the children if the letters are appropriate." Father's counsel then attempted to make an offer of proof of the "letters * * * from [father] to [DHS] and to his children." The court did not accept father's offer of proof, ruling "that should have been offered in your case at the time [father] was here."

On appeal, father contends that the juvenile court erred when it conducted the final day of the hearing in father's absence. Father argues that the court violated his statutory right to "participate in hearings," ORS 419B.875(2)(c), which includes "the right to testify in [his]

own behalf[,]" *Dept. of Human Services v. D. J.*, 259 Or App 638, 643, 314 P3d 998 (2013). DHS responds that father's right to "participate" in the permanency hearing was satisfied by his opportunity to testify during the first two days of the permanency hearing.

We review the meaning of the rights conferred by ORS 419B.875(2) as a matter of law, under the established rules of statutory construction. *See D. J.*, 259 Or App at 643-44 (applying that review framework). The rights afforded parties to a juvenile court proceeding include:

"(b)  The right to appear with counsel and, * * * to have counsel appointed as otherwise provided by law; [and]

"(c)  The right to call witnesses, cross-examine witnesses and participate in hearings[.]"

ORS 419B.875(2). In *D. J.*, we "readily" concluded that a party's statutory right to participate includes the right to testify in the party's own behalf. 259 Or App at 643. We described that conclusion as "inescapable given the other rights listed in subsection (2)," including the "right to appear with counsel" and the "right to call witnesses." *Id.* at 643-44 (quoting ORS 419B.875(2)(b)). Thus, we held that "[p]articipating in a hearing solely through counsel cannot substitute for participating as a witness if a party wishes to offer his or her own testimony." *Id.* at 644.

The father in *D. J.* was incarcerated and expected to participate by telephone in the permanency hearing. His attorney represented that the father would have testified about his efforts to participate in programs that could help him reunite with his children. The court, nevertheless, conducted the hearing with the father "participating" solely through counsel after the court was unable to make telephone contact with the prison. *Id.* at 641. We emphasized that the father was denied the opportunity to participate at a time when the court had to make a determination that could affect whether a petition to terminate parental rights would be filed and that, if the father had been able to provide the evidence that his attorney described, "he might have been able to persuade the court that he could be reunited with [his child] within a reasonable time." *Id.* at 645. We held that the court erred in proceeding with the hearing in

the father's absence and that the error required reversal. *Id.* at 646.

DHS argues that the result should be different in this case because, unlike the father in *D. J.*, father had an opportunity to testify—and did testify—during the first two days of the hearing. DHS also argues that "the purpose of the September 16 hearing was to give the parents the opportunity to subpoena [the caseworker], and to allow DHS to present any rebuttal evidence." Under those circumstances, DHS argues, the court satisfied father's right to participate in the hearing. We disagree.

As in *D. J.*, father was denied the opportunity to participate in a day of hearing at which his testimony was critical to the presentation of evidence that the court would have considered in making its determination about whether to change the plan to the direction of termination. Father clearly expressed his wish to participate in the final day of the hearing. Indeed, he obtained a court order directing the sheriff to transport father to the courthouse for that day, and father's counsel represented that father "expected that he was going to be appearing personally." Moreover, father's counsel articulated why father had a critical role yet to play on the final day of the hearing. Counsel represented that she "wanted to show [father] some documents and offer those through him," and that "at the time of the last hearing, we didn't have the information that we have now on the status of the case to make the trial decisions on whether [father] wanted to introduce this evidence."

As the court made clear when it denied father's offer of proof, father's absence meant that, in reaching its decision, the court did not consider the letters that father attempted to send to his children. Those letters formed a key part of father's argument that DHS failed to make reasonable efforts toward reunification, because he pointed, in part, to the caseworker's refusal to allow any communication between father and the children.[2] Father disputed DHS's

---

[2] Although we have "decline[d] to delineate exactly what types of actions would make DHS's efforts reasonable when a parent is incarcerated[,]" we noted in *State ex rel Juv. Dept. v. Williams*, that DHS could have "engaged in any number of activities that it did not attempt and that might constitute reasonable

suggestion that the caseworker's actions could be explained because the letters were inappropriate. And resolution of that dispute was material to the court's determination that DHS proved the plan should change toward termination of parental rights, as indicated by the court's explicit finding that "[f]ather was allowed to write to the children and continues to be allowed to write to the children if the letters are appropriate."

Construing ORS 419B.875(2) "'so as to give effect to all relevant provisions,'" the right "to participate" in the hearing means something separate from the other statutory rights, such as to participate through counsel and to call witnesses. *D. J.*, 259 Or App at 644 (quoting *State v. Mayes*, 220 Or App 385, 389, 186 P3d 293 (2008)). Under the circumstances of this case, we conclude that father's right to participate in the hearing included the right to consult with counsel about strategic evidentiary decisions and to complete the presentation of his evidence. When the court conducted the final day of hearing in father's absence, it denied father his right "to participate." *Id.*

We emphasize that this is not a case in which the court rejected additional testimony from father on an evidentiary or procedural ground—such as that the evidence would be cumulative or beyond the scope of a limited continuance. Contrary to DHS's suggestion that the court left the record open for the limited purposes of subpoenaing the caseworker to testify and taking rebuttal evidence from DHS, the court placed no limitations on what evidence father would be allowed to present or how father would be allowed to present it. Indeed, the court expressly contemplated that parents would also issue a subpoena for the caseworker's records, presumably as a potential source of more evidence. As father's counsel explained, the court's decision to quash that contemplated subpoena led to "the trial decisions" that made testimony from father necessary to introduce additional evidence. And the court made it clear that it was willing to allow father to present his additional evidence at the reconvened hearing, explaining, "Well let's see

___

efforts" including investigating possible contact between the parent and child. 204 Or App 496, 507-08, 130 P3d 801 (2006).

if we can make arrangements to get him on the phone, and * * * if you want to put him back on, we can go ahead and do it." It was the court's decision to proceed in father's absence, after being unable to arrange for his participation by telephone, that denied father the opportunity to present the rest of his case. That decision was error.

Finally, we reject DHS's argument that the error does not require reversal. We emphasized in *D. J.* that the court's decision to conduct the hearing in the father's absence denied the father the opportunity to participate at a time when the court had to make a determination that could affect whether a petition to terminate parental rights would be filed, and denied him the opportunity to present evidence through which "he might have been able to persuade the court" to reach a different decision. We held that, under those circumstances, "the assertion by father's attorney that father wished to participate at the permanency hearing was adequate to establish that he was prejudiced by the denial of that right" and, thus, adequate for reversal. 259 Or App at 644, 646 (citing *Cler v. Providence Health System-Oregon*, 349 Or 481, 490, 245 P3d 642 (2010), for the proposition that "we will reverse a judgment based on a lower court's error only if that error substantially affected a party's rights").

Here, too, we conclude that the denial of father's right to participate in the hearing was an error that substantially affected his rights and, therefore, requires us to reverse the judgment. *See D. J.*, 259 Or App at 646; *see also* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). As father's counsel articulated, by denying father the right to participate in the final day of the hearing, the trial court denied father the ability to consult with his attorney about a critical evidentiary decision and to present final evidence. The court's decision to change the permanency plan relied, in part, on its finding that the caseworker reasonably denied father communication with his children. Had father been allowed to present the additional evidence, "he might have been able to persuade the court" to reach a different determination of whether DHS reasonably withheld father's letters to the children and, ultimately, of whether

DHS had made reasonable efforts to make it possible for the children to return to father.[3]

Reversed and remanded.

---

[3] Although we decline to address mother's assignment of error, we must reverse and remand the combined dispositional and permanency judgment because "permanency plan," as used in ORS 419B.476, "specifically refers to a singular plan for the child, rather than a plan for each parent." *Dept. of Human Services v. D. L. H.*, 253 Or App 600, 602, 292 P3d 565 (2012).