***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted August 16, on respondent's motion to dismiss filed July 7; motion to
dismiss denied, reversed and remanded September 28, 2022

In the Matter of D. C. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. M. M., Jr.,
*Appellant.*

Jackson County Circuit Court
20JU06414; A178373

David J. Orr, Judge.

George W. Kelly filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Lagesen, Chief Judge, and Joyce, Judge.

TOOKEY, P. J.

Motion to dismiss denied; reversed and remanded.

**TOOKEY, P. J.**

In this juvenile dependency case, father appeals a permanency judgment in which the juvenile court determined that DHS had made reasonable efforts at reunification. At the time of the permanency hearing, father was incarcerated in California, and the prison could not make him available to appear telephonically due to a quarantine. On appeal, in his first assignment of error, father assigns error to the juvenile court's denial of his motion for a continuance. For the reasons that follow, we reverse and remand.

"We review the juvenile court's denial of a motion for a continuance for abuse of discretion." *Dept. of Human Services v. E. M.*, 268 Or App 332, 335, 341 P3d 216 (2014). That is, "we review whether the court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome." *Id.*

In January 2022, the juvenile court held a permanency hearing, and father's counsel asked the court to continue the hearing to a later date. He explained that father wanted to contest whether DHS had made reasonable efforts at reunification, but due to a quarantine at father's prison, father had not been able to attend the prehearing conference, father had been unreachable by phone for two weeks, and the prison would not make father available to appear at the hearing by phone as previously planned. Father's counsel argued that, under *Dept. of Human Services v. D. J.*, 259 Or App 638, 314 P3d 998 (2013), the court could not hold the hearing without father and that, "to be able to actually represent [father's] interests in this case, I do need to be able to speak with [father], I do need his presence and I do need him to appear." The juvenile court asked father's counsel what testimony father expected to offer. Father's counsel outlined various points intended to prove that DHS had not made reasonable efforts toward reunification during the preceding 14 months but explained to the court, "[T]his is something that I would need to talk to my client about, which is why I would like him here to testify and [would] like the ability to actually be able to speak with my client before making an argument on his behalf." Ultimately, the juvenile court denied father's motion for a continuance and

proceeded with the hearing in his absence. Based primarily on the testimony of a DHS caseworker and a DHS report submitted into evidence, the juvenile court found by a preponderance of the evidence that DHS had made reasonable efforts toward reunification.

On appeal, father argues that the juvenile court erred by denying his motion for a continuance and proceeding with the permanency hearing in his absence in violation of his rights under ORS 419B.875(2)(c).[1] DHS concedes—and we agree—that, in the circumstances of this case, the juvenile court abused its discretion by denying father's motion for a continuance. *See D. J.*, 259 Or App at 640, 643-44 (holding that a party's right to participate in hearings under ORS 419B.875(2)(c) "includes the right to testify in the party's own behalf"; therefore, the juvenile court "erred by proceeding with the permanency hearing in father's absence, over the objection by father's attorney"); *cf. E. M.*, 268 Or App at 337 (noting that a "juvenile court has the authority to postpone a hearing *** to protect the parent's right to participate, ORS 419B.875(2)(c), when a parent is *unable to or prevented from personally appearing* due to the parent's incarceration," and concluding that, when father was unable to appear, "the juvenile court abused its discretion in denying father's motion for a continuance" (emphasis in original)).

Having concluded that the juvenile court abused its discretion, we "turn to the question of whether the court's error was prejudicial." *D. J.*, 259 Or App at 644 (citing *Cler v. Providence Health System-Oregon*, 349 Or 481, 490, 245 P3d 642 (2010) ("We will reverse a trial court's judgment only if the trial court's error substantially affected a party's rights.")). We conclude that it was.

"When the court's dependency jurisdiction is invoked, ORS 419B.875(2)(c) provides that '[t]he rights of the parties include, but are not limited to *** [t]he right to *** participate in hearings[.]'" *Dept. of Human Services v. M. T. J.*, 304 Or App 148, 161, 466 P3d 702 (2020) (quoting ORS

---

[1] ORS 419B.875(2)(c) provides, in part, "The rights of the parties include, but are not limited to *** [t]he right to call witnesses, cross-examine witnesses and participate in hearings[.]"

419B.875(2)(c); brackets and emphasis in *E. J.*). Under ORS 419B.875(2), a parent's right to participate in a permanency hearing "includes the right to testify in the party's own behalf," *D. J.*, 259 Or App at 643, and "the right to consult with counsel about strategic evidentiary decisions," *Dept. of Human Services v. A. E. R.*, 278 Or App 399, 406, 374 P3d 1018 (2016).

In this case, in asking the court to continue the hearing so that father could testify, father's counsel explained that, due to a quarantine at father's prison, father had not been able to attend the prehearing conference; father had been unreachable by phone for two weeks; and that, to represent father's interests at the permanency hearing, he needed to be able to consult with father. And when the court asked what evidence father intended to provide, father's counsel explained, "[T]his is something that I would need to talk to my client about, which is why I would like him here to testify and [would] like the ability to actually be able to speak with my client before making an argument on his behalf." As we have already concluded, by proceeding with the hearing in father's absence, over his attorney's objection, the court denied father his participation rights under ORS 419B.875. *D. J.*, 259 Or App at 646 (changing child's permanency plan in father's absence, over father's attorney's general objection, violated father's rights of participation under ORS 419B.875 and was thus reversible error; under the circumstances, "assertion by father's attorney that father wished to participate at the permanency hearing was adequate to establish that he was prejudiced by the denial of that right"). And, as a result of the court's erroneous ruling, father was left with no ability to consult with his counsel about strategic evidentiary decisions, or present testimony that, if determined to be relevant and credited by the court, might have persuaded the court to reach a different decision regarding reasonable efforts; in our view, there is "some likelihood" that that ruling affected the court's reasonable efforts determination. *Hadley v. Extreme Technologies, Inc.*, 272 Or App 49, 66, 355 P3d 132, *rev den*, 358 Or 449 (2015) ("Where our review of the record persuades us that there is 'some' or a 'significant' likelihood that the error influenced the result, we must reverse."); *see also M. T. J.*, 304 Or App

at 162 (ruling categorically preventing father from presenting certain evidence regarding mother was not harmless, because that evidence, "if determined to be relevant and credited by the court, might have persuaded the court to reach a different decision").

We recognize that this is not a case in which the deprivation of the parent's right to participate under ORS 419B.875 occurred at a hearing that resulted in a change to the permanency plan. *Cf. D. J.*, 259 Or App at 640 (permanency plan changed from reunification to adoption); *A. E. R.*, 278 Or App at 401 (same). Nevertheless, as we have previously explained, "an erroneous determination of reasonable efforts must be corrected regardless of whether doing so affects the ultimate disposition in a dependency case, *because that determination may have collateral consequences.*" *Dept. of Human Services v. R. W.*, 277 Or App 37, 45, 370 P3d 543 (2016) (emphasis added); *see also Dept. of Human Services v. J. F. D.*, 255 Or App 742, 750 n 4, 298 P3d 653 (2013) ("The parties agree that the ultimate disposition—return to parent, with a concurrent plan of adoption—should not be disturbed on remand. They also agree, however, that if we conclude, as we have, that DHS did not make reasonable efforts, a new judgment so specifying is necessary, because changing the reasonable efforts conclusion has collateral consequences regardless of whether the approved plan is changed."). A reasonable efforts determination may, for example, "affect judicial determinations at subsequent permanency hearings, as well as termination proceedings." *R. W.*, 277 Or App at 45; *see also Dept. of Human Services v. S. W.*, 267 Or App 277, 294, 340 P3d 675 (2014) (noting DHS's "early efforts" were a factor in determining whether, under the totality of the circumstances, DHS made reasonable efforts to support a change of plan).

In arguing for a contrary result regarding prejudice, DHS contends that father's offer of proof was merely cumulative of the evidence presented by DHS. That contention is unpersuasive. As explained above, father's attorney made that offer of proof without the benefit of consulting with father and, therefore, had no opportunity to prepare a more detailed offer of proof regarding the evidence father intended to provide concerning DHS's lack of reasonable

efforts. *D. J.*, 259 Or App at 646 ("[A]ssertion by father's attorney that father wished to participate at the permanency hearing was adequate to establish that he was prejudiced by the denial of that right," and "that offer of proof was sufficient even with respect to the facts to which father might have testified, given that his attorney had no way of knowing that father would not be present at the hearing and, therefore, no reason (or opportunity) to prepare a more detailed offer of proof."). In this case, father's attorney's offer of proof "could not substitute for the more detailed testimony that father presumably would have been able to give" had he been allowed to testify. *Id.* at 645.

DHS also argues that nothing father could have testified to could have changed the result of the hearing. To be sure, the record—which, again, was made without father's participation—"does not demonstrate unequivocally that father's testimony would have influenced the juvenile court's decision." *Id.* at 646. Nevertheless, given the totality of circumstances considered by juvenile courts in making reasonable efforts determinations, we are persuaded that there is "some likelihood" in this case that father's participation could have changed the result of the hearing: The juvenile court's reasonable efforts determination was based on the testimony of a DHS caseworker and a report prepared by DHS, unchallenged by father's testimony regarding his perspective of events, and cross-examination was conducted by father's counsel without the benefit of having consulted with father in preparation for the hearing. *See, e.g.*, *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 306, 388 P3d 1204 (2017) ("When assessing DHS's efforts, a juvenile court properly considers the length and circumstances of a parent's incarceration, and evidence specifically tied to a parent's willingness and ability to participate in services." (Internal quotation marks, citation, and brackets omitted.)); *Dept. of Human Services v. T. S.*, 267 Or App 301, 310, 340 P3d 142 (2014) (reasonable efforts determination includes consideration of "whether a parent has attempted to make appropriate changes").

For the above reasons, we conclude that the trial court erred by denying father's motion for a continuance and proceeding with the permanency hearing in father's

absence, over the objection by father's attorney, and that the error was prejudicial. The "remedy for that error is reversal of the permanency judgment and remand." *D. J.*, 259 Or App at 646.

In his third assignment of error, father contends that the trial court erred in ruling that DHS had made diligent efforts to place his child, D, with father's parents. But during the pendency of this appeal, DHS filed a motion to dismiss father's third assignment of error as moot, contending that that assignment has become moot because D was placed in the care of father's parents shortly after the permanency hearing. Father takes no position on DHS's motion.

DHS's motion to dismiss father's third assignment of error as moot is denied; a motion to dismiss a single assignment of error as moot is not cognizable. The proper method to alert the court that an assignment of error has become moot is through a notice of probable mootness.

We agree with DHS, however, that because D was placed in the care of father's parents shortly after the permanency hearing, father's argument that DHS did not make diligent efforts to place the child with father's parents is now moot. Having noted that, in any event, we also note that our reversal of the permanency judgment on father's first assignment of error obviates the need to reach father's second and third assignments of error.

Motion to dismiss denied; reversed and remanded.