No. 893          December 11, 2024          751

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of E. L. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

E. L. D.,
*Respondent,*
*v.*

E. L. P.
and J. D.,
*Appellants.*

Umatilla County Circuit Court 22JU05972;
A183373 (Control), A183887

Eva J. Temple, Judge.

Argued and submitted September 30, 2024.

George W. Kelly argued the cause and filed the brief for appellant E. L. P.

Ginger Fitch argued the cause for appellant J. D. Also on the briefs was Youth, Rights & Justice.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Aron Perez-Selsky filed the brief for respondent E. L. D.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Reversed and remanded for entry of judgment omitting allegation 4M as a basis for jurisdiction; otherwise affirmed.

**JOYCE, J.**

In this consolidated juvenile dependency appeal, mother and father appeal a jurisdictional judgment in which the juvenile court found their child to be within its dependency jurisdiction under ORS 419B.100. Father raises five assignments of error, and mother raises one assignment of error. In father's first two assignments of error, he argues that the juvenile court erred in denying his motions to continue after father was unable to appear by video or in person but was able to appear by phone. In his third and fourth assignments of error, father argues that the juvenile court erred in denying his request for replacement counsel and his counsel's motion to withdraw. In father's fifth assignment of error and mother's single assignment of error, the parents argue that the juvenile court erred in taking jurisdiction over their child. We reverse and remand for entry of judgment omitting allegation 4M as a basis for jurisdiction, and we otherwise affirm.

We begin with a brief overview, reserving for later a more detailed discussion of the facts and procedural history as they relate to each assignment of error. Mother and father have one child, E, who was born in 2015. In December 2022, the Department of Human Services (DHS) filed a dependency petition alleging that E's conditions or circumstances were endangering E's welfare so as to bring E within the court's jurisdiction under ORS 419B.100(1)(c). That petition included allegations about domestic violence, mother's mental health problems, and the parents' failure to provide medical treatment to E, among others. The petition also included allegation 4M, that "mother failed to, [and] cannot maintain a safe environment for the child because mother has allowed the child to live in [a] home that is unsafe and unsanitary."

The jurisdictional hearing began in May 2023 and, after several continuances, ended in December 2023. At the conclusion of those proceedings, the juvenile court asserted jurisdiction over E based on 11 allegations as to father and seven allegations as to mother.

## MOTIONS TO CONTINUE

In father's first and second assignments of error, he argues that the juvenile court erred in twice conducting

parts of the jurisdictional hearing "without father being present in person or by Webex." When the jurisdictional hearing began in May 2023, father appeared in person. The court subsequently set the hearing to continue on August 31, 2023. Father was then incarcerated in August 2023. He appeared on the August 31, 2023, date by video from prison. On that date, after the state concluded its case and mother began presenting her case, the court continued the hearing to November 7, 2023.

Father subsequently filed two motions to continue the jurisdictional hearing based on his unavailability to be at the next hearing date in person or by video. In his first motion, father asked the juvenile court to continue the jurisdictional hearing date set for November 2023 because father had recently been transferred to a new prison facility and the facility and the sheriff's office were unable to accommodate father's request to appear in person or by video at the hearing.

The juvenile court did not rule on the motion prior to the hearing. On the day of the hearing, father appeared by phone. Father told the court that he had asked his attorney to request certificates related to classes father had completed while in prison and asked if the attorney had received them. The court asked father and his attorney if they needed some time to discuss the certificates. His attorney, who was present in the courtroom, said that "the bigger issue here is the motion to continue." Father's attorney explained that father requested a continuance because he wanted to appear in person or by video so that he could observe people testify and the court could observe him when he testified. The state opposed the motion, noting that "we are closely approaching the year mark since the petition was filed" and "parents have been allowed to appear by phone for jurisdiction and even TPR trials."

The juvenile court granted the continuance "as to father," ruling that the parties could conclude mother's case and then reschedule father's part of the hearing for a later date so that he could participate by video or in person. Father's attorney noted that his first witness preferred to testify that day and asked the court if "we could start my

case today and—assuming we finish with mother's case—and then *** call my first witness *** [a]nd then *** come up with a date where [father] would be able to appear at least by Webex if not in person." The juvenile court indicated it had "no problem with that." The hearing continued with father cross-examining mother and then calling the maternal grandmother as his first witness. At the conclusion of that testimony, the juvenile court set the next hearing date for the following month, December 2023.

Shortly before that hearing date, father filed a second motion to continue. The basis for that motion was that the correctional facility where he was housed was again unable to accommodate his request to appear at the hearing by video because "the video conferencing technology [was] not available," and the sheriff's office was unable to transport father to appear in person. At the hearing, father appeared by phone and his attorney argued that "[w]hen [father] testifies, he *** wants the Court to be able to see him to better assess his credibility." The state opposed the motion to continue, arguing that under ORS 419B.918 the court may allow a person to participate "in any manner that complies with requirements of due process, including, but not limited to, telephonic or other electronic means." The state also noted that "360 days [have passed] since the petition was filed." After expressing concern about the case being "so far past its expiration date," the court denied father's motion.

Father testified at that hearing by phone. He testified extensively about classes and programs that he was participating in while in prison. Father referred to "transcripts" and "certificates" that would verify his participation. During his testimony, father asked his attorney if he had requested the verification-of-completion documents, because father wanted to offer them into evidence. Father's attorney offered an exhibit into evidence, "which are the certificates that [father] has been testifying about for programs that he's completed while [in custody]."

On appeal, father argues that the juvenile court's rulings on his motions to continue violated his right to participation under ORS 419B.875(2)(c) and his due process rights under the Fourteenth Amendment to the United

States Constitution. Overall, we review the denial of a request for a continuance for abuse of discretion. *Dept. of Human Services v. E. M.*, 268 Or App 332, 335, 341 P3d 216 (2014). Where, as here, the exercise of discretion turns on a predicate question of law, we review the legal question for legal error. *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 116-17, 376 P3d 960 (2016) ("[A] trial court may abuse its discretion if its decision is based on predicate legal conclusions that are erroneous ***."). As explained below, we conclude that the juvenile court did not abuse its discretion in partially denying father's first request for a continuance or denying his second request.[1]

Beginning with father's statutory argument, under ORS 419B.875(2)(c), parties have the "right to call witnesses, cross-examine witnesses and participate in hearings[.]" A party's right to participate under that statute "includes the right to testify in the party's own behalf" and "the right to consult with counsel about strategic evidentiary decisions and to complete the presentation of [their] evidence." *Dept. of Human Services v. A. E. R.*, 278 Or App 399, 404, 406, 374 P3d 1018 (2016). "A juvenile court has the authority to postpone a hearing or make other procedural accommodations to protect the parent's right to participate *** when a parent is *unable to or prevented from personally appearing* due to the parent's incarceration[.]" *E. M.*, 268 Or App at 337 (emphasis in original). Under ORS 419B.918, the juvenile court "may permit [a parent], instead of appearing personally, to participate in any hearing related to a petition alleging jurisdiction under ORS 419B.100 *** in any manner that complies with the requirements of due process including *** telephonic or other electronic means."

Here, father appeared by phone and testified on his own behalf, and father's attorney called witnesses and cross-examined witnesses. It is true that father's appearance by phone prevented him from visually observing witnesses testify and prevented the court from visually

---

[1] The parties dispute whether the court's ruling on father's first motion to continue was a denial of that motion. In our view, the court's ruling was a partial denial of the motion to continue because, although the court granted father a continuance to allow him to testify in person or by video, it denied his motion insofar as it allowed the hearing to continue with other witnesses.

observing him testify. Nothing in the juvenile code or case law, however, requires that a parent be able to appear by video or in person. *Cf. Dept. of Human Services v. D. J.*, 259 Or App 638, 645, 314 P3d 998 (2013) (concluding that juvenile court erred in proceeding with a permanency hearing after attempts to call the father to have him testify by phone failed; noting that the father's "demeanor, credibility, and persuasiveness in [his testimony] (whether observed visually or, as would have been the case here, through hearing the parent's speech patterns, tone, and pitch of voice) may be critical to the court's ultimate determination"); *A. E. R.*, 278 Or App at 407 ("It was the court's decision to proceed in father's absence, after being unable to arrange for his participation by telephone, that denied father the opportunity to present the rest of his case. That decision was error.").

In addition to father being able to testify and his attorney being able to call witnesses, cross-examine witnesses, and present evidence, father's appearance by phone allowed father to consult with his attorney. Father testified at length about his participation in programs and classes and was able to verify that his attorney had the records corroborating his participation. And father's attorney had those records admitted into evidence.[2] *Cf. A. E. R.*, 278 Or App at 401, 403 (where sheriff failed to transport the father to court and court was unable to arrange the father's participation by phone, juvenile court erred in holding final day of permanency hearing in the father's absence because that absence "prevented introduction of exhibits that were pertinent to his theory of the case"). Thus, the statute did not itself require father to appear by video or in person, rather than by phone. However, the statute requires participation that complies with due process. Accordingly, we next consider father's argument that telephonic appearance does not comport with due process.

In juvenile dependency proceedings, due process requires that parents be provided with "fundamentally fair"

---

[2] Father argues that "father was not present to verify that all the records he wanted offered were part of that exhibit," noting that in his testimony he referred to "27 certificates" and that the exhibit only contained six certificates. Father's appearance by phone, however, did not prevent him from consulting with his attorney about the exhibit.

procedures such that they have the "opportunity to be heard at a meaningful time and in a meaningful manner." *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189-90, 796 P2d 1193 (1990); *Dept. of Human Services v. J. M.*, 266 Or App 453, 459, 338 P3d 191 (2014), *rev den*, 356 Or 685, and *rev den*, 356 Or 689 (2015) ("Juvenile dependency proceedings implicate the due process rights of parents."). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 US 319, 334, 96 S Ct 893, 47 L Ed 2d 18 (1976) (internal quotation marks omitted).

To determine what due process requires, we evaluate three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the *** burdens that the additional or substitute procedural requirement would entail." *Eldridge*, 424 US at 334-35.

With respect to the first factor, father argues, and we agree, that he has a significant liberty interest "in controlling the care and custody of his *** child." *J. M.*, 266 Or App at 461 ("There is no doubt that, as a general matter, a parent's desire for and right to the companionship, care, custody and management of his or her children is an important interest." (Internal quotation marks and citations omitted.)).

As to the second factor (the risk of an erroneous deprivation of the interest at stake and the probable value, if any, of additional safeguards), father argues that requiring him to appear by phone, instead of by video or in person increased the risk to some degree that the court would disbelieve or discount his testimony because it could not see him while he testified. That may or may not be true. However, we also note that father appeared in person or by video during the entirety of the state's case and the majority of mother's case and appeared by phone only during the conclusion of mother's case—where father's attorney was able to cross-examine mother, who was not an adverse witness against father. Father's appearance by phone was primarily during

father's case, during which time his attorney presented evidence and father testified on his own behalf. Although the court's ability to assess father's credibility may have been enhanced had father testified in person or by video, we have previously described, in circumstances similar to this case, the value of that additional safeguard as "incremental." *State ex rel Juv. Dept. v. Stevens*, 100 Or App 481, 488, 786 P2d 1296, *rev den*, 310 Or 71 (1990), *cert den*, 498 US 1119 (1991) (where father testified by phone during termination of parental rights hearing, our inquiry was to "decide whether [father] was afforded a full and fair opportunity to present evidence in his behalf and to rebut evidence offered against him and *** decide only whether the *incremental* safeguard of personal appearance is not merely desirable, but constitutionally required" (emphasis in original)).

Turning to the third factor, we agree with father that any administrative burden in rescheduling the proceeding to allow father to appear by video or in person may have been marginal. However, that is not the only burden on the state's interest that the delay would have implicated. "[T]he dependency process implicates the government's 'urgent interest' in the welfare of the child *** [and] the child's best interests, which includes a strong interest *** in having [custody] disputes resolved as expeditiously as possible, consistent with due process." *J. M.*, 266 Or App at 461 (internal citations omitted). Thus, although father has a significant liberty interest here, that interest is balanced against the interests of the child and the government and the need for an expeditious resolution of the proceeding, particularly given that it had been nearly a year since DHS had filed the dependency petition.

Ultimately, given the low risk that father's appearance by phone led to an erroneous deprivation of his liberty interest and factoring in the interests of child and the government, we conclude that the juvenile court's denial of father's motions to continue did not violate his due process rights. *See Stevens*, 100 Or App at 487 (father was not denied due process in termination of parental rights proceeding where he "testified by telephone and was able to consult with his counsel," his testimony "followed that of the adverse

witnesses," and his counsel "was able to cross-examine the adverse witnesses meaningfully").

## REQUEST FOR NEW COUNSEL

In father's third and fourth assignments of error, he argues that the juvenile court erred in denying his request for replacement counsel and his counsel's motion to withdraw. Specifically, father argues that the juvenile court erred in failing to make an inquiry and rule on his request and counsel's motion before presenting father with the choice to continue with existing counsel or proceed *pro se*. *See State v. Stanton*, 369 Or 707, 716, 720, 511 P3d 1 (2022) (a trial court errs when it submits a choice to a criminal defendant to choose between self-representation and representation by current counsel, where the court fails to first determine whether the defendant's complaints against counsel were legitimate or whether the defendant has waived their right to counsel).

In making those arguments, father assumes that the standard governing appointment of new counsel in criminal proceedings applies equally in juvenile dependency proceedings. The standard in criminal proceedings stems from the Sixth Amendment to the United States Constitution and Article I, section 11, of the Oregon Constitution. *See State v. Langley*, 314 Or 247, 258, 258 n 9, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993) (a legitimate complaint about a criminal defendant's court-appointed attorney "is one that is based on an abridgement of a criminal defendant's constitutional right to counsel").

In juvenile dependency proceedings, however, the right to counsel is not governed by those same constitutional provisions. *Geist*, 310 Or at 188 n 13 ("Any federal constitutional right mother might have to appointed counsel in a termination case would be derived from the Due Process Clause of the Fourteenth Amendment, not from the Sixth Amendment. * * * The right to counsel under * * * the Oregon Constitution is available only in criminal prosecutions."). ORS 419B.205 addresses the right to counsel in dependency proceedings other than termination of parental rights.[3] Subsection (1) of

---

[3] ORS 419B.518 addresses the right to counsel in termination-of-parental-rights proceedings. ORS 419B.518(1) ("If the parents are determined to be

that statute provides that "[c]ounsel shall be appointed for [indigent parents] whenever the nature of the proceedings and due process so require[.]" The subsection further provides:

> "In deciding whether to appoint counsel under this section, the court shall consider the following factors:
>
> "(a)  The duration and degree of invasiveness of the interference with the parent-child relationship that possibly could result from the proceeding;
>
> "(b)  The complexity of the issues and evidence;
>
> "(c)  The nature of the allegations and evidence contested by the parent or legal guardian; and
>
> "(d)  The effect the facts found or the disposition in the proceeding may have on later proceedings or events, including but not limited to termination of parental rights or criminal proceedings."

ORS 419B.205(1). The Supreme Court has explained that, under that statute, "a juvenile court retains authority to deny a parents' request for counsel in dependency proceedings [other than termination of parental rights] if the nature of the proceeding and due process do not require representation." *Dept. of Human Services v. T. L.*, 358 Or 679, 688, 369 P3d 1159 (2016).

Thus, the right to counsel at a jurisdictional hearing, like the one at issue here, is substantially different from the right to counsel in a criminal proceeding. Father does not acknowledge the origin of the right in this case or, accordingly, its scope and extent; rather, his arguments rest solely on the Sixth Amendment right to counsel that is applicable to criminal cases. Because father has developed no argument under ORS 419B.205(1) or the applicable case law, we reject his third and fourth assignments of error without further discussion.

## JURISDICTION

In father's fifth assignment of error and mother's sole assignment of error, parents argue that the juvenile court erred in asserting jurisdiction over their child with respect

---

financially eligible, and request the assistance of appointed counsel, the court shall appoint an attorney to represent them at state expense.").

to the seven allegations against mother, contending that the evidence was insufficient to show that mother posed a current risk of harm to the child. *See Dept. of Human Services v. E. M.*, 264 Or App 76, 81, 331 P3d 1054 (2014) ("Under ORS 419B.100(1)(c), jurisdiction is proper when a child's 'conditions or circumstances are such as to endanger the welfare' of the child. A child's welfare is endangered if the child is exposed 'to conditions or circumstances that present a current threat of serious loss or injury.'" (Citation omitted.)). DHS concedes that the juvenile court erred in asserting jurisdiction on one of the allegations—that mother "allowed the child to live in [a] home that is unsafe and unsanitary" (allegation 4M)—but argues that the evidence in the record was sufficient to prove the remaining allegations.

We review the sufficiency of the evidence supporting dependency jurisdiction by "view[ing] the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess[ing] whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Having reviewed the record, we agree with and accept DHS's concession as to allegation 4M and conclude that the court did not err in taking jurisdiction based on the remaining allegations.[4]

Reversed and remanded for entry of judgment omitting allegation 4M as a basis for jurisdiction; otherwise affirmed.

---

[4] Both parents assign error only to the ultimate ruling on dependency jurisdiction without separately assigning error to any individual jurisdictional findings. We note that "the best practice" is to assign error to an individual jurisdictional finding when an appellant wants us to review a particular finding independent of our conclusion as to whether dependency jurisdiction exists. *Dept. of Human Services v. R. H.*, 320 Or App 383, 387, 512 P3d 1279 (2022). However, because mother's questions presented, arguments, and request for relief indicate that mother is separately challenging the juvenile court's rulings on each allegation, we independently consider each jurisdictional finding. *See id.* ("We take a pragmatic approach to interpreting assignments of error[.]").