Argued and submitted January 11, reversed and remanded March 27, 2013

In the Matter of D. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. F. D.,
*Appellant.*

Linn County Circuit Court
J110511;
Petition Number 11198J;
A152075

298 P3d 653

Valerie Colas, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jake J. Hogue, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F.

Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

### SCHUMAN, P. J.

In this juvenile dependency case, father appeals from a dispositional judgment in which the juvenile court determined that the Department of Human Services (DHS or the department) had made reasonable efforts to eliminate the need for removal of the child, D, from the home. Although he does not challenge the juvenile court's disposition *per se* ("return to parent" with a concurrent plan of adoption), father argues that the court's "reasonable efforts" conclusion was erroneous because the department did not contact him in the seven months between the filing of the jurisdictional petition and the dispositional hearing and provided him with no services during that period. DHS responds that, under the totality of the circumstances, its efforts were reasonable: Mother (who is not a party in this appeal) received extensive services, and DHS requested that officials in Kentucky, where father was living at the time, conduct a home study to determine whether D could be placed with him. Because we agree with father that DHS's efforts were not reasonable, we reverse and remand.

We review findings of fact (for example, what DHS did or did not do) for any evidence, and conclusions of law (in particular, whether the historical facts constitute reasonable efforts) for legal error. In April 2011, when D was four years old, DHS became involved with the family due to, among other things, father's anger management issues and the parents' inability to meet D's basic needs. Thereafter, but before the formal proceedings in this case began, father moved to Kentucky and left D in mother's care. In July 2011, mother requested assistance from DHS. One month later, she voluntarily placed D in a foster home. Three months thereafter, on November 17, DHS filed a petition to assert jurisdiction over D, citing numerous "conditions or circumstances" with respect to both father and mother. The juvenile court held a shelter hearing and took D into protective custody. DHS did not notify father of the hearing.

In March 2012, four months after the court placed D in protective custody, DHS, pursuant to the Interstate Compact for the Placement of Children (ICPC), requested that Kentucky officials complete a home study of father's

home (he was living with his mother at the time). The record does not show whether the study was ever conducted. Nonetheless, on May 29, 2012, the juvenile court entered a judgment asserting jurisdiction over D, as to father, based on father's admission to the following facts:

"[Father] has an anger management issue that poses a threat to the safety of said child and requires evaluation and recommended treatment.

"Yes, I do go [*sic*] anger issues but I have been going to anger management to be a better father to my child [D]."

After the court asserted jurisdiction over D, DHS continued to provide services to mother and D, but it did not provide any services to father or have any contact with him until shortly before the dispositional hearing.

That hearing occurred on June 15, 2012. The only contested issue was whether DHS had made "reasonable efforts * * * to prevent or eliminate the need for removal of the ward from the home since the date of the last court review."[1] Mother had communicated to DHS her desire to relinquish her parental rights and did not attend the hearing. Father, however, appeared by telephone and, through his attorney (who was present in the courtroom), objected to the court's conclusion that DHS had made "reasonable efforts" in light of its delay in serving him with the jurisdictional petition, its four-month delay in initiating the ICPC referral, and its failure to provide any services or contacts. Father also argued that, to the extent that the ICPC referral was a "service," it did not address his anger management issues, the only basis for jurisdiction. In response, DHS introduced one witness, a caseworker, who testified:

"I will say that DHS had a lot of contact with this family prior to the court's involvement with them, including various referrals, which the Affidavit of Protective Custody delineates, that includes that in May 2011, I personally spoke to [father] in regard to a referral and he stated at that time that he was going to leave the state. I told him at that time,

---

[1] The juvenile court's judgment cites ORS 419B.185 as the authority for its "reasonable efforts" finding. However, that statute applies to a juvenile court's findings at a shelter hearing. Here, DHS had already been awarded custody of the child at the time of the dispositional hearing. Thus, ORS 419B.340 is the applicable statute.

prior to a legal case, that he needed to complete some sort of anger management if he was going to be around his child, and he left.

"After that—this is mostly just by reviewing the case file as I am not the caseworker right now. But I can see that in July 2011, after [father] left to go to Kentucky, the [mother's consent to have D placed in a foster home] was signed [by mother] and the child was placed voluntarily through DHS.

"It's my understanding, in looking through the court documentation, that the legal case did not occur until November 2011, and at that time—I can't speak to how much contact the agency had with [father], I'm not sure how much information we knew about his whereabouts except the general state that he was in.

"But that's—that's my attempt to argue the reasonable efforts finding."

The juvenile court also received, as an exhibit, a DHS report that contained a "check the box" list of DHS's efforts to return D to each parent. As to mother, DHS provided parental training, a psychological evaluation, assistance with transportation and housing, supervised visitation, and referrals for services for D. In addition, the caseworker testified that D

"is a very challenging, very special needs child and he's been involved with [In-Home Safety and Reunification Services] with his mother that we had continuing communication with, 30 day face-to-face contacts which aren't articulated here, transportation for the mother, bus passes for visits, mental health referral and communication with that provider, going to * * * meetings every one to two weeks, continued communication with the foster parent regarding his special needs, and the list goes on."

As to father, the DHS "check the box" report listed only one effort: "ICPC home study referral (2) for child's family." The caseworker testified that DHS did not have any information about the ICPC aside from the fact that a referral was made, but father's attorney reported that father had not been contacted by Kentucky officials, "though apparently [father's] mother has." Father also stated that he had voluntarily enrolled in an anger management program in Kentucky.

The trial court ultimately determined that, although DHS's delay in initiating the ICPC was unreasonable, DHS nonetheless made reasonable efforts when "viewed in the entirety, not just focused on one parent or services to one parent or a particular service to one parent," and in consideration of the challenge posed by father residing out of state. The juvenile court subsequently entered the dispositional judgment, approving the case plan for reunification with a parent, with the concurrent plan of adoption. The judgment contained a check-the-box entry indicating that DHS "has made * * * reasonable efforts * * * to prevent or eliminate the need for removal of the ward from the home since the date of the last court review."

On appeal, father argues that DHS's failure to contact him in the seven months between the filing of the petition and the dispositional hearing renders its efforts unreasonable as a matter of law and that the efforts that DHS did make—requesting a home study through the ICPC and providing services to mother and D—were not reasonable efforts to reunify D *with father.* DHS responds that its efforts were reasonable when viewed in the totality, which, DHS argues, is the correct analysis at the dispositional stage of a juvenile dependency case.

It is the policy of the State of Oregon to offer "appropriate reunification services" to parents when a child has entered protective custody and a dependency petition has been filed. ORS 419B.090(5). Pursuant to that policy, DHS generally is required to make "reasonable efforts" to make possible a child's safe return home while the dependency case is pending. ORS 419B.340(1); ORS 419B.476(2)(a). To ensure compliance, the juvenile court is required to determine whether DHS has satisfied that mandate at the dispositional hearing, which generally occurs 60 days after the petition is filed. ORS 419B.305(1); ORS 419B.340(1).[2] Specifically, at the dispositional stage, the juvenile court is required to determine

---

[2] The juvenile court is also required to determine at a permanency hearing whether DHS has made reasonable efforts to make possible a child's safe return home; the hearing generally occurs 12 months after the petition is filed. ORS 419B.470(2); ORS 419B.476(2)(a).

"whether the department has made reasonable efforts * * * to prevent or eliminate the need for removal of the ward from the home. If the ward has been removed prior to the entry of the order, the order shall also include a determination whether the department has made reasonable * * * efforts to make it possible for the ward to safely return home."

ORS 419B.340(1).

Father contends that the evidence in the record does not support a determination that DHS made reasonable efforts to eliminate the need for the removal of D or to make it possible for D to return home safely, because DHS provided no services to father other than requesting the ICPC. We agree with father that, based on the sparse record, the evidence does not support a determination that DHS made "reasonable efforts" to "eliminate the need for removal" of D or "to make it possible for [D] to safely return home" *as to father*. The only effort that DHS made as to father during the seven months between the filing of the jurisdictional petition and the dispositional hearing was to request that authorities in Kentucky perform a home study through the ICPC. Because DHS adduced no evidence to suggest that it followed up to determine whether the home study actually took place, it is no exaggeration to find that DHS made almost *no* efforts "to prevent or eliminate the need for removal of the ward from [father's] home" or "to make it possible for the ward to safely return [to father's] home."

Nevertheless, DHS contends that the juvenile court's reasonable efforts determination under ORS 419B.340(1) does not require that DHS's efforts be reasonable specifically as to father; rather, DHS argues, its efforts should be viewed under the totality of the circumstances, considering all of DHS's efforts regarding mother and D.

In response, father cites *State ex rel Juv. Dept. v. Williams*, 204 Or App 496, 130 P3d 801 (2006), and *Dept. of Human Services v. D. L. H.*, 251 Or App 787, 284 P3d 1233, *adh'd to as modified on recons*, 253 Or App 600, 292 P3d 565 (2012), cases in which we separately reviewed DHS's efforts, as to each parent, to reunify children with their parents at the permanency and termination stages. In *Williams*, we concluded that, despite DHS's extensive involvement with

the mother, the department had failed to engage and work with the father, who was incarcerated, to provide any services; thus, DHS's efforts were not reasonable. 204 Or App at 507-08. Similarly, in *D. L. H.*, we separately analyzed DHS's efforts to reunify a child with the mother and father, who were both incarcerated, concluding that, although DHS had made "active efforts" to reunify the child with the mother, DHS had failed to make "active efforts" to reunify the child with the father.[3] 251 Or App at 803-04.

DHS argues that *Williams* and *D. L. H.* are distinguishable because the "reasonable efforts" findings in those cases were made in the context of the juvenile court changing the permanency plans from reunification to adoption, not at the dispositional stage. To make such a change, the juvenile court must

> "determine whether [DHS] has made reasonable efforts * * * to make it possible for the ward to safely return home *and whether the parent has made sufficient progress to make it possible for the ward to safely return home.* In making its determination, the court shall consider the ward's health and safety the paramount concerns."

ORS 419B.476(2)(a) (emphasis added). Thus, DHS contends, changing the permanency plan requires the court to measure DHS's "reasonable efforts" in terms of each parent's progress, whereas a "reasonable efforts" finding at the dispositional stage does not require the court to analyze DHS's efforts directed at each parent individually.

We disagree. Although the type and sufficiency of effort that DHS is required to make depends on the particular circumstances of each case, *Williams*, 204 Or App at 506-07, the legislature's use of the term "reasonable efforts" throughout the Juvenile Code indicates that the term's general meaning remains the same. *Id.* at 502 n 1 (meaning of "reasonable efforts" in the Juvenile Code is the same when addressing termination of parental rights and permanency plans); *see also D. L. H.*, 251 Or App at 799 n 4 (meaning of "active efforts" in the termination setting is the same as "active efforts" in the permanency setting). Further, in a

---

[3] "Active efforts," as opposed to "reasonable efforts," were necessary because the child was an Indian Child as defined in 25 USC § 1903(4) (2006). ORS 419B.476(2).

case such as this one, where mother has surrendered her parental rights, or in a case where the mother's "home" and the father's "home" are different, it makes no sense to require DHS to expend reasonable efforts with respect to removal from, or return to, one home but not the other, any more than it makes sense to gauge only one parent's progress at the permanency stage. We therefore conclude that, in determining the reasonableness of DHS's efforts at the dispositional stage, ORS 419B.340(1), the juvenile court must assess DHS's efforts as to each parent. The fact that one parent has moved out of state, like any other fact, may be taken into consideration in determining whether the department's efforts are reasonable, but that fact alone does not necessarily and completely relieve the department of the requirement to make reasonable efforts with respect to that parent.

Because DHS's efforts to eliminate the need for removal and make it possible for D to safely return home were not reasonable as to reunification with father, the court erred in determining that DHS made reasonable efforts. We therefore reverse and remand.[4]

Reversed and remanded.

---

[4] The parties agree that the ultimate disposition—return to parent, with a concurrent plan of adoption—should not be disturbed on remand. They also agree, however, that if we conclude, as we have, that DHS did not make reasonable efforts, a new judgment so specifying is necessary, because changing the reasonable efforts conclusion has collateral consequences regardless of whether the approved plan is changed. Regulations implementing the Adoption and Safe Families Act of 1997 (ASFA), Pub L 105-89, 111 stat 2115 (1997) (codified in scattered sections of USC titles 2 and 42), provide that, in order for a child to qualify for federal foster care payments, there must be a judicial determination of reasonable efforts to prevent the child's removal from the home and to reunify the family. 45 CFR § 1356.21(b)(1). Further, should the department move to the concurrent plan of adoption, a conclusion that the department has not provided father with services to "make it possible for the ward to safely return home" will delay the filing of a termination of parental rights petition, thereby allowing father more time to make necessary progress. ORS 419B.498(2)(c).