Submitted December 22, 2015, reversed and remanded for correction of reasonable efforts determination, otherwise affirmed March 16, 2016

In the Matter of N. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

N. W.,
*Respondent,*

*v.*

R. W.,
*Appellant.*

Linn County Circuit Court
15JU00011;
Petition Number J150004;
A159694

370 P3d 543

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Shannon Flowers, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Cecil A. Reniche-Smith, Assistant Attorney General, filed the brief for respondent Department of Human Services.

Jennifer R. Stoller filed the brief for Child.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

In this dependency case, father appeals from a dispositional judgment, challenging the juvenile court's determination that the Department of Human Services (DHS) made reasonable efforts to reunite father with child.[1] He argues that DHS failed to offer him services during the five and one-half months between child's removal and the dispositional hearing and that it did not adequately explain why that failure was reasonable under the circumstances. Generally, we "review findings of fact (for example, what DHS did or did not do) for any evidence, and conclusions of law (in particular, whether the historical facts constitute reasonable efforts) for legal error." *Dept. of Human Services v. J. F. D.*, 255 Or App 742, 744, 298 P3d 653 (2013). Because we conclude that the juvenile court erred in its factual findings regarding services DHS provided to father and in its determination that DHS made reasonable efforts, we reverse and remand.

On December 31, 2014, DHS removed child, N, from father's home and placed her in substitute care. N was 15 years old at the time. On January 2, 2015, DHS filed a dependency petition, and McKinstry, a DHS caseworker, met with father to explain the type of reunification services the agency could provide for him, including anger management courses, parenting support, and mental health evaluation and treatment services. Father refused services and did not sign any releases of information, though it is not clear from the record how the need for releases was communicated to father.

Three months later, on April 1, 2015, the juvenile court asserted jurisdiction over N after concluding that father subjected child to verbal, emotional, and physical abuse and that problems with father's mental health interfered with his ability to safely parent. The court postponed the dispositional hearing until mid-May 2015.

Two days before the dispositional hearing, father contacted DHS to request a referral for an anger management course and signed a release of information. DHS made

---

[1] Mother is not a party to this appeal.

the referral on the same day as the dispositional hearing. At the hearing, father objected to DHS's claim that it had made reasonable reunification efforts. Father contended that DHS had not issued him any referrals until the day of the hearing. DHS did not rebut father's claim. The court expressed concern about that issue, stating:

> "Nobody has to wait for a court order to make a referral. * * * [T]he reasonable efforts have to begin the moment the child is removed so what's happening in these cases, and this is not the only one, is there's this dead air that goes on from the time of the shelter hearing until disposition. Even after jurisdiction when there's a basis for the service there's no referral made. Now, if you make a referral and the parent declines to participate or refuses to do it that's on them. * * * [B]ut you can't just wait for disposition to make these referrals. When I make a reasonable efforts finding I have to make a finding [of whether] the agency made reasonable efforts from the date the child was removed until today to ameliorate those problems. *Clearly with regard to those two items that has not been done.*"

(Emphasis added.) Miranda, another DHS caseworker, responded,

> "[W]e need to have releases of information and we * * * asked for those prior and we never got releases and I cannot submit referrals for anything without a release of information[.] * * * I was told that everything had to run through the attorneys and I had no release of information."

The court then asked Miranda if she requested a release of information from father's attorney regarding his mental health; she responded that she had not.[2]

Ultimately, in its dispositional judgment, the court checked the box indicating that DHS *had* made reasonable efforts "to prevent or eliminate the need for removal of the ward from the home since the date of the last court review." In particular, the court checked boxes indicating that DHS had issued father referrals for the same services identified in the DHS court report (which DHS did not dispute had not been offered before the hearing): anger management

---

[2] Miranda also indicated that N was engaged in counseling and had declined visits with father.

counseling, mental health evaluation/treatment, specialized parent training, counseling, development of safety plan, individual counseling, and intensive family services.

On appeal, father contends that the court erred by determining that DHS's reunification efforts were reasonable. Father admits that he declined services initially, but he maintains that DHS's failure to offer services thereafter, especially after the court asserted jurisdiction in April 2015, was unreasonable. He points out that DHS did not explain why a lack of a release of information precluded it from making any referrals. According to father, "the department is obligated to make reunification efforts *regardless* of the parent's release of information from a service provider to the department or from the department to a service provider." (Emphasis in original.)

DHS, in contrast, maintains that its reunification efforts were reasonable. It argues that, to determine whether DHS made reasonable efforts, we consider the particular circumstances of a case, including whether the parent attempted to make the necessary changes or refused to participate in the required service plans. DHS notes that father initially declined services, failed to provide any releases of information, and did not contact DHS to indicate that he had changed his mind about participating in services. In addition, it points out that child was in counseling and did not want visits with father. DHS asserts that, under those circumstances, its efforts were reasonable.

Furthermore, DHS argues that even if its efforts were not reasonable, that conclusion does not require a reversal of the dispositional judgment because the error asserted by father is harmless. According to DHS, correcting the judgment would serve no purpose, because N "will still be a ward of the court, and father will still be required to engage in services." That is, DHS disagrees with our conclusion in *J. F. D.*, 255 Or App at 750 n 4, where we held that it was necessary to reverse and remand a dispositional judgment to correct an erroneous determination of reasonable efforts. DHS claims that, contrary to our suggestion in *J. F. D.*,

"[a] juvenile court's reasonable-efforts finding at the disposition stage does not affect the timing of a petition to terminate parental rights. Rather, the juvenile court must make a new reasonable-efforts finding based on everything that has transpired in the case, and not simply on what happened prior to its disposition judgment."

Child agrees that DHS's reunification efforts were reasonable. She argues that, because father initially declined services, it was reasonable for DHS not to offer services again until after the court asserted jurisdiction. Child also notes that N was receiving counseling, which is a reunification service. Ultimately, child contends that, although "DHS arguably should have offered services again in the six weeks between the date jurisdiction was established and the dispositional hearing, DHS's delay was not unreasonable under the circumstances."

In *J. F. D.*, we explained the policy behind the reasonable efforts requirement:

"It is the policy of the State of Oregon to offer 'appropriate reunification services' to parents when a child has entered protective custody and a dependency petition has been filed. ORS 419B.090(5). Pursuant to that policy, DHS generally is required to make 'reasonable efforts' to make possible a child's safe return home while the dependency case is pending. ORS 419B.340(1); ORS 419B.476(2)(a). To ensure compliance, the juvenile court is required to determine whether DHS has satisfied that mandate at the dispositional hearing, which generally occurs 60 days after the petition is filed. ORS 419B.305(1); ORS 419B.340(1)."

255 Or App at 747; *see also State ex rel Juv. Dept. v. Williams*, 204 Or App 496, 500, 130 P3d 801 (2006) ("To ensure compliance, the juvenile court is required to determine whether DHS has satisfied that mandate at both the dispositional hearing * * * and the permanency hearing, which generally occurs 12 months after the petition is filed.").[3] Furthermore, we explained that the mandate requires an assessment of

---

[3] We also concluded that the use of the term "reasonable efforts" throughout the Juvenile Code suggests "that the term's general meaning remains the same" throughout the dependency proceedings. *J. F. D.*, 255 Or App at 749.

"'whether the department has made reasonable efforts * * * to prevent or eliminate the need for removal of the ward from the home. If the ward has been removed prior to the entry of the order, the order shall also include a determination whether the department has made reasonable * * * efforts to make it possible for the ward to safely return home.' ORS 419B.340(1)."

*J. F. D.*, 255 Or App at 748 (omissions in *J. F. D.*). We clarified that, "[a]lthough the type and sufficiency of effort that DHS is required to make depends on the particular circumstances of each case," "the juvenile court must assess DHS's efforts as to each parent." *Id.* at 749, 750.

In this case, we first consider whether there is evidence in the record to support the juvenile court's factual findings as to services provided to father. We conclude that the findings in the dispositional judgment regarding all of the referrals identified by checked boxes, 277 Or App at 40-41, except for the referral to anger management counseling, are not supported by evidence in the record. The court's comments that "there's this dead air that goes on from the time of the shelter hearing until disposition" and that "after jurisdiction when there's a basis for the service there's no referral made" contradict its finding that DHS provided various services before the dispositional hearing. Moreover, those comments demonstrate that the court rejected the minimal evidence in the record that suggests that DHS made the referrals indicated in the dispositional judgment. The only evidence in the record that tends to support the court's findings of services provided to father is the testimony by the DHS caseworker that she informed father about possible reunification services on January 2. However, that evidence is insufficient to support a finding that father received all of the referrals noted in the dispositional judgment.

Second, we consider whether the court erred by determining that DHS's reunification efforts were reasonable. In DHS's view, father's lack of interest and failure to engage with services and N's desire not to visit with father are sufficient facts to demonstrate that DHS's failure to provide services was reasonable. We disagree. Although we generally consider the particular circumstances of a case,

including the parent's degree of cooperation,[4] the reasonable efforts inquiry is primarily directed toward DHS's conduct, not the parent's. ORS 419B.340(1) specifically requires that a court determine whether *"the department has made reasonable efforts * * * to prevent or eliminate the need for removal of the ward from the home"* or "to make it possible for the ward to safely return home." (Emphasis added.) We recognize that a parent's failure to sign releases or unwillingness to engage in services can hamper DHS's efforts; however, that alone is not one of the circumstances that legally excuses DHS from making reasonable efforts as to that parent. *See* ORS 419B.340(5)(a) - (c) (listing a limited set of circumstances that exempt DHS from making reasonable reunification efforts, including aggravated circumstances, certain convictions, and a prior involuntary termination); *see also J. F. D.*, 255 Or App at 750 (father's move to another state, standing alone, did not "necessarily and completely relieve the department of the requirement to make reasonable efforts with respect to that parent" at the dispositional stage). Therefore, in determining whether DHS made reasonable efforts, we consider a parent's lack of cooperation, but we evaluate such lack of cooperation within the context of DHS's conduct and the case circumstances. *Cf. Dept. of Human Services v. N. S.*, 246 Or App 341, 350, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012) (although "[s]ome of DHS's efforts were hampered by mother's conduct," DHS's efforts in response to that conduct were reasonable).

In this case, although father was initially uncooperative, DHS did not demonstrate that it made any subsequent attempts to provide, or even to offer, father services. At the dispositional hearing, the caseworker stated that she had not issued any referrals because she had not received a release of information from father; however, the record does not describe whether and how the necessity of a release was communicated to father, nor does it contain any information about whether and why DHS is precluded from making a referral without a release. Furthermore, even assuming

---

[4] In determining whether DHS made reasonable efforts, "[w]e also consider whether a parent has attempted to make appropriate changes and whether he or she ignored or refused to participate in plans as required by DHS." *Dept. of Human Services v. T. S.*, 267 Or App 301, 310, 340 P3d 142 (2014).

that claim is true, the record does not indicate why, in this case, DHS made no additional attempts to obtain a release from father, especially after the court asserted jurisdiction.[5] The fact that N was in counseling and did not want visits with father does not speak to the question of the reasonableness of DHS's efforts as to father. The lack of action by DHS is significant in this case, given the prolonged period of time between the removal date and the dispositional hearing, a total of five and one-half months. Therefore, on this record, we conclude that the juvenile court erred by determining that DHS made reasonable efforts to make it possible for N to safely return home.

Accordingly, we reverse and remand the dispositional judgment to allow for the entry of a new judgment reflecting the correct reasonable efforts determination. *See J. F. D.*, 255 Or App at 750 n 4. As noted, DHS argues that such a disposition is unnecessary. It asserts that an erroneous reasonable efforts determination at the dispositional stage is harmless because it does not vacate the child's commitment or compel the return of the child to the parent's home. However, as we pointed out in *J. F. D.*, an erroneous determination of reasonable efforts must be corrected regardless of whether doing so affects the ultimate disposition in a dependency case, because that determination may have collateral consequences. *Id.* Not only can a reasonable efforts determination affect eligibility for foster care funding, it may also affect judicial determinations at subsequent permanency hearings, as well as termination proceedings. *See id.*

It is true that, at the permanency stage, a court must assess whether DHS made reasonable efforts for a sufficient period of time to allow for an assessment of the parent's progress. *State ex rel Dept. of Human Services v. E. K.*, 230 Or App 63, 77, 79, 214 P3d 58, *rev den*, 347 Or 348 (2009); *State ex rel Dept. of Human Services v. H. S. C.*, 218 Or App 415, 426, 180 P3d 39 (2008). However, contrary to

---

[5] The court did not make any findings suggesting that any further efforts by DHS to have father sign a release of information or to engage in services would have been futile, and DHS does not point to any evidence in the record to support such inference.

DHS's contention, that does not make correction of an earlier reasonable efforts determination unnecessary; even if the court were to make the later determination anew after considering the entire case history leading up to the permanency hearing, a prior erroneous reasonable efforts determination can affect or influence that new determination. *See Dept. of Human Services v. S. W.*, 267 Or App 277, 294, 340 P3d 675 (2014) (DHS's "early efforts" were a factor in determining whether, under the totality of the circumstances, DHS made reasonable efforts to support a change of plan); *see also E. K.*, 230 Or App at 78 (the assistance offered by DHS before and right after the children's removal was a factor in the reasonable efforts analysis). For that reason, it is necessary to correct an erroneous determination.

Reversed and remanded for correction of reasonable efforts determination; otherwise affirmed.