***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted June 6, affirmed July 26, petition for review denied
November 17, 2023 (371 Or 535)

In the Matter of K. V.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. T.,
*Appellant.*

Marion County Circuit Court
20JU06909; A179876

Natasha A. Zimmerman, Judge pro tempore.

Elena C. Stross, Deputy Public Defender, argued the
cause for appellant. Also on the briefs was Shannon Storey,
Chief Defender, Juvenile Appellate Section, Office of Public
Defense Services.

Jona J. Maukonen, Assistant Attorney General, argued
the cause for respondent. Also on the brief were Ellen F.
Rosenblum, Attorney General, and Benjamin Gutman,
Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and
Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Mother appeals from a juvenile court judgment changing the permanency plan for her child, K, from reunification to adoption,[1] raising two assignments of error on appeal. In the first assignment, she argues that the court erred in ruling that the Department of Human Services (DHS) made reasonable efforts towards reunification. In the second assignment, she argues that, because DHS failed to make reasonable efforts, the juvenile court erred in changing the permanency plan from reunification to adoption. We conclude that the juvenile court did not err in ruling that DHS made reasonable efforts towards reunification, and also did not err when changing the permanency plan from reunification to adoption.

Mother has not asked us to exercise our discretion to review this case *de novo*, nor is it an exceptional case warranting *de novo* review. *See* ORS 19.415(3)(b) (providing this court with discretion to conduct *de novo* review in equitable cases); ORAP 5.40(8)(c) (*de novo* review is appropriate only in exceptional cases). We are bound by the juvenile court's factual findings as to what efforts DHS has made, so long as there is any evidence in the record to support them. *Dept. of Human Services v. J. D. R.*, 312 Or App 510, 512, 493 P3d 567 (2021). Thus, we view the evidence, as supplemented and buttressed by permissible inferences, in the light most favorable to the juvenile court's disposition and assess whether the record is legally sufficient to permit the outcome. *See id.* The juvenile court's determination that DHS's efforts were reasonable constitutes a legal conclusion that we review for errors of law. *Id*.

Given the standard of review, we state the following relevant facts and procedural history of this case, only to the extent necessary, to provide context for our analysis. Mother gave birth to K in November of 2020. K suffers from profound disabilities. Mother brought K back to the hospital two weeks after her birth because K was losing weight. Based on concerns that mother was unable to properly care for K after hospital staff observed mother having difficulty

---

[1]  Father is not a party to this appeal.

feeding K, following a feeding schedule, and properly mixing formula for K, DHS removed K from mother's care and placed K with a nonrelative resource parent. K has remained with that resource parent throughout this case.

The juvenile court took jurisdiction of K in February 2021, on the ground that mother was unable to properly care for K due to her special needs. The court found that mother "lacks the necessary parenting skills and knowledge to safely parent the child" and that K "has medical needs that require strict treatment and medical supervision" and that mother required the "help of the state" to provide. An additional jurisdictional basis was added in July 2021 stating that "mother's mental health impairs her ability to safely parent the child."

Mother's psychological evaluation in April 2021 revealed moderate intellectual disability, an abbreviated IQ score of 50, and a variety of mental health issues, including depression, post-traumatic stress, and "personality features which will make relationships and parenting challenging." The psychologist, Dr. Cook, stated that providers working with mother need to "understand that [mother] possesses cognitive deficits which slow her ability to process concepts, follow instructions, and keep up with demands," and that mental health providers and parenting strategies need to be tailored to mother's ability level, that mother "may need redundant instructions, multiple trials of hands-on practice, and supervised oversight for some time." Notably, Cook stated that "if [mother] cannot admit she needs to improve her parenting, avail herself to instructions and feedback, demonstrate a willingness to grow in regards to parenting, follow-through more consistently with medical procedures and appointments, or cooperate with service providers, reunification planning should be slowed or halted."

Mother received substantial services that included monthly team meetings, hands-on parenting services, supervised visits, referrals for housing options, mental health counseling, developmental disability services, a parent mentor and regular reminders and updates for K's medical appointments as well as occasional transportation assistance to medical appointments. Mother's counsel notes

that mother did not receive a specialized parent training service tailored to K's medical needs. DHS notes that it did not locate parent training services that would be tailored to K's medical needs, because all available services were limited to the primary caregiver, which mother was not.

During the dependency hearing, mother gave conflicting statements both that DHS had not provided her with services and that she did not need anything from DHS to properly parent K, both of which are inconsistent with the record and mother's later testimony. The juvenile court found based on mother's testimony that she believed she did not need services to properly parent K. The juvenile court found that mother's belief was sincere and credible, and that her testimony was consistent with her behavior throughout the case.

The juvenile court determined that mother had engaged with and subsequently disengaged from services that had been made available through DHS. The court relied on Cook's recommendation that reunification may be possible only if mother avails herself of instruction, admits she needs to improve her parenting skills, demonstrates improvement, and consistently follows through and cooperates with service providers and their recommendations. The juvenile court found that, while there may have been more services that could have been appropriate, DHS had made reasonable efforts, and that mother did not demonstrate progress that would have allowed those services to be provided.

When a child is subject to juvenile court jurisdiction, the court must make certain determinations at each permanency hearing, including whether DHS has made reasonable efforts to reunify the child with their parents. *J. D. R.*, 312 Or App at 517. DHS bears the burden and must demonstrate that its efforts were reasonable by a preponderance of the evidence. *Id*. "Reasonable efforts for purposes of ORS 419B.476(2)(a) are efforts that focus on ameliorating the adjudicated bases for jurisdiction, and that give parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents." *Dept. of Human Services v. V. A. R.*, 301 Or App

565, 567, 456 P3d 681 (2019) (quotation marks omitted). The reasonableness of DHS's efforts depends on the particular circumstances of the case. *Id*. "The jurisdictional language provides the lenses through which the reasonableness of DHS's efforts is analyzed. For those reasons, the wording of the jurisdictional basis set forth in the judgment *matters*." *J. D. R.*, 312 Or App at 518 (emphasis in original). When DHS fails to provide or offer a particular service to a parent, we review the adequacy of DHS's efforts in light of the potential benefits that providing that service could have yielded. *Id*.

Mother argues that DHS did not provide hands-on parent training to mother specific to K's medical needs and that that deficiency demonstrates a failure on the part of DHS to make reasonable efforts to ameliorate the jurisdictional bases. DHS responds that it provided appropriate services that afforded many opportunities for mother to learn about K's needs and gain the necessary skills to become a minimally adequate parent to a child with significant medical needs. DHS further points out that the services provided accounted for mother's need for repeated and rudimental instruction. The record shows that, despite the inability to locate and provide a hands-on parent training specialized to K's medical needs, DHS did provide mother with multiple services and opportunities to learn about child's medical needs, and the services provided were appropriate to mother's demonstrated abilities and progress.

We reject mother's contention that DHS's efforts were unreasonable. DHS did in fact engage with mother to provide repetitive hands-on training in which she often failed to engage, and when she did engage, she became frustrated, distracted, and irritated. In the end, mother could not admit that she needed any skills training as a parent, as was demonstrated by her testimony at the hearing. In evaluating DHS's reasonable efforts, the court considers a parent's lack of cooperation, along with the parent's ability to learn or adapt. *See Dept. of Human Services v. C. H.*, 327 Or App 61, 76-77, 533 P3d 1112 (2023) (quoting *Dept. of Human Services v. R. W.*, 277 Or App 37, 44, 370 P3d 543 (2016)). Here, the juvenile court recognized the difference between mother's perception of the services that had been provided

and the true nature of those services. The court also recognized that mother's resistance to those services did not excuse DHS from providing them and that, at no time, did DHS stop providing services, even in light of mother's resistance to them. We conclude that the juvenile court did not err in ruling that DHS made reasonable efforts towards reunification. We further conclude, based on our review of the record, that the juvenile court did not err in changing the permanency plan for K from reunification to adoption.

Affirmed.