Submitted May 31, motion to dismiss appeal as moot denied, affirmed
September 20, 2023

In the Matter of A. R. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

CONFEDERATED TRIBES OF WARM SPRINGS,
*Respondent,*

*v.*

A. C. S. G.,
*Appellant.*

Benton County Circuit Court
22JU01524; A179158 (Control)

In the Matter of L. R. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

CONFEDERATED TRIBES OF WARM SPRINGS,
*Respondent,*

*v.*

A. C. S. G.,
*Appellant.*

Benton County Circuit Court
22JU01525; A179159

536 P3d 1075

Mother appeals the juvenile court orders denying her motions to invalidate dependency proceedings and dismiss dependency petitions concerning each of her two children, both of whom are Indian children under the Oregon Indian Child Welfare Act (ORICWA) and the federal Indian Child Welfare Act (ICWA). She asserts six errors, challenging the court's determinations under the ICWA/ORICWA that Oregon Department of Human Services (DHS) provided her with adequate notice of the dependency proceedings and made active efforts to reunite her family. According to mother, the alleged lack of adequate notice and of active efforts were ICWA/ORICWA violations that required the court to vacate the proceedings. DHS has moved to dismiss, arguing that mother's appeal is moot because the court has since dismissed jurisdiction and terminated the wardship.

*Held*: DHS did not meet its burden to persuade the Court of Appeals that mother's appeal was moot. On the merits, however, the court did not err because there was no violation of the ICWA or the ORICWA. The notice of intent to initiate foster care proceedings and establish wardship that mother received via certified mail over 10 days prior to the related hearing was proper ICWA/ORICWA notice. Likewise, the active-efforts determinations that the court made at each shelter hearing and which were based on evidence that was documented in detail in writing and on the record met the respective ICWA/ORICWA requirements and standard.

Motion to dismiss appeal as moot denied; affirmed.

Locke A. Williams, Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sean Connor, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, filed the brief for respondent Department of Human Services.

Sarah Monkton and Best Best & Krieger LLP filed the brief for respondent Confederate Tribes of Warm Springs.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Motion to dismiss appeal as moot denied; affirmed.

**ORTEGA, P. J.**

This is a consolidated juvenile dependency proceeding concerning two children, A and L, both of whom are Indian children within the meaning of the Oregon Indian Child Welfare Act (ORICWA) and the federal Indian Child Welfare Act (ICWA). *See* ORS 419B.600 - 419B.665; Indian Child Welfare Act of 1978, 25 USC §§ 1901 - 1963. Mother appeals juvenile court orders denying her motions to invalidate the proceedings and dismiss the dependency petitions and asks us to reverse those orders and to vacate the court's subsequent jurisdictional judgments.[1] She assigns six errors, and, in a combined argument, challenges the court's determinations that she received adequate ICWA and ORICWA notice of the proceedings and that Oregon Department of Human Services (DHS) made active efforts to reunite her family.[2] DHS has moved to dismiss, asserting that mother's appeal is moot because the juvenile court has since dismissed jurisdiction over A and L and terminated the wardship. DHS has not met its burden of persuasion, so we deny its motion to dismiss. On the merits, however, we conclude that the juvenile court did not err in any of the ways asserted by mother and affirm the jurisdictional judgments.

We provide some background and recount those facts necessary to explain our rulings. On April 1, 2022, DHS petitioned the juvenile court to assert jurisdiction over three-year-old A and two-year-old L after A suffered a second-degree burn while in mother's care. On that same day, the juvenile court held a shelter hearing and, after mother was unable to provide a reasonable explanation for A's injury, asserted temporary jurisdiction over A and

---

[1] The children's biological and presumed legal fathers were represented by counsel in the lower proceedings but are not parties to this appeal. The Confederated Tribes of the Warm Springs Reservation of Oregon, of which A and L are members and which participated as a party below, filed a notice of intent to participate in this appeal but declined to respond to mother's assignments of error, asserting that those raise no concerns of tribal jurisdiction.

[2] For the purpose of mother's arguments, the ICWA and the ORICWA include similar requirements as to notice and active efforts. *See* ORS 419B.639; ORS 419B.645; 25 USC § 1912(a), (d). We thus refer to those statutes as ICWA/ORICWA throughout this opinion and point out any differences if those are relevant to our analysis.

L under ICWA/ORICWA. ORS 419B.627(4); 25 USC § 1922. The court made active-efforts findings and scheduled a jurisdictional and disposition hearing for May, almost eight weeks later.

On April 22, the tribe dismissed jurisdiction over A.[3] DHS then mailed mother and other interested parties via certified mail a notice of intent to initiate foster care proceedings and establish wardship, which mother received on May 2. That notice provided that the court had scheduled a jurisdictional and disposition hearing for May 25, more than 10 days from the date that mother received the notice.

On May 20, during a second shelter hearing, mother requested an additional 20 days to prepare for the custody proceedings. The court granted mother's motion, renewed its emergency proceedings findings—including active-efforts findings—and scheduled a third shelter hearing for a week later—May 27—to comply with ORICWA,ORS 419B.185(5)(d).

During the third shelter hearing, the court scheduled the jurisdictional trial for June 13, and multiple witnesses testified, including DHS child abuse investigator Mark Davis, who spoke about his investigation of A's injury, DHS's visitation plan, and DHS's request that mother take a violence assessment to evaluate which services she needed to safely parent A and L. According to Davis, mother had had one in-person visit with L and an audio visit with A in the weeks since the children had been removed; he reported that more visits had not been possible due to the 12- to 14-hour drive to the clinic where mother was residing and the fact that members of the clinic staff were not qualified to supervise visits. Davis's affidavits regarding the investigation were received as exhibits.

On June 9, a few days before the date of the jurisdictional trial, mother moved under ICWA and ORICWA to dismiss the proceedings as to each child on two grounds. She argued that she received insufficient notice of the June 13 jurisdictional trial and that, as of June 8, DHS had failed to make active efforts to reunify her family.

---

[3] Although the tribe's order terminating the wardship—as observed in the record—concerns A alone, neither mother nor the tribe has raised any jurisdictional challenge as to L in that respect. We therefore assume that there is none.

During the June 13 jurisdictional trial, the court orally denied mother's motions and subsequently issued a written order finding that notice "was proper and prompt" as statutorily required and that DHS had made "active efforts during the course of [the] proceedings." Prior to that, the court had found that Davis's testimony and affidavits showed that DHS had made active efforts even if the efforts were not "wholly successful." In addition to the facts above, Davis's affidavit and testimony indicated that four days after DHS's petition for jurisdiction over A and L, Davis left a voice-mail message with the tribe, "attempt[ing] to set up a visit" and two days later—on April 6—spoke with the tribe for the same purpose. The tribe agreed to supervise a visit with both parents, and a visit was set up for mother with A and L on that same day. DHS provided gas assistance to transport mother to the visit, which was canceled because mother was arrested and a No Contact Order was issued. On May 7, mother was authorized to have contact with L, so Davis emailed mother's attorney attempting to schedule a visit. The next day, Davis spoke to mother and learned that she was going to participate in the treatment program that was 12 to 14 hours away. Mother "asked to wait on visits until she [could] get[]" settled into the program. The juvenile court determined that A and L were within its jurisdiction and entered jurisdictional judgments.

Mother appeals, maintaining that DHS failed to provide ICWA/ORICWA-compliant notice of the June 13 jurisdictional trial and to make "active efforts" before the foster placement of A and L to prevent the breakup of her family.

After the parties filed their appellate briefs, the juvenile court dismissed jurisdiction and wardship as to both children. DHS argues that this case is now moot. Mother contends that we should reject DHS's argument because reversing the juvenile court's rulings, including the ruling that A and L were endangered based on the fact that A was seriously injured while in mother's care, would affect mother's rights. According to mother, those rulings, unchallenged, would disadvantage her in future child welfare matters.

An appeal is moot when a decision will no longer "have a practical effect on the rights of the parties." *Dept. of Human Services v. G. D. W.*, 353 Or 25, 32, 292 P3d 548 (2012). When a parent objects to a mootness argument by identifying "any continuing practical effects or collateral consequences that, in the parent's view, render the appeal justiciable[,]" DHS has the burden of persuading us that "the effects or consequences that the parent identifies are either legally insufficient or factually incorrect." *Dept. of Human Services v. A. B.*, 362 Or 412, 426, 412 P3d 1169 (2018). Here, DHS argues that there are no "probable adverse collateral consequences" but offers no further explanation specific to the adverse consequences that mother has identified. DHS has failed to meet its burden of persuasion, and we deny DHS's motion to dismiss.

We turn to the merits of mother's arguments challenging the denial of her ICWA/ORICWA motions and, as we explain below, conclude that the court did not err.

In reviewing the denial of mother's motions, we review the court's findings of fact regarding what DHS did or did not do for any evidence. *Dept. of Human Services v. R. W.*, 277 Or App 37, 39, 370 P3d 543 (2016). We review for legal error the court's conclusions that the notice was proper and that the historical facts of DHS's efforts constitute active efforts. *Id.*

ORICWA provides that any state or local court of competent jurisdiction,

> "shall vacate an order *** involving an Indian child regarding jurisdiction [or] placement *** if the court determines that any provision of [ORS] 419B.639 (2), (3)(a) or (b) or (5)(a) *** or, *where required*, [ORS] 419B.645 *** has been violated and the court determines it is appropriate to vacate the order or judgment."

ORS 419B.651(2)(a) (emphasis added); *see also* ORS 419B.639(2), (3)(a), (b), (5)(a) (requiring that for jurisdictional proceedings involving an Indian child, prompt notice must be sent to the parent by registered or certified mail and the hearing "may not be held until at least 10 days after" receipt of the notice, among other requirements); ORS 419B.645(2)

(requiring the juvenile court to "determine whether active efforts have been made to prevent the breakup of the family"); ORS 419B.305(3)(b) ("The court may not schedule a hearing on the petition, or enter an order on the petition, unless the * * * notice requirements" under ORS 419B.639(2) and "all relevant timelines have been followed.").[4]

Regarding notice, the record supports the court's conclusion that mother received proper ICWA/ORICWA notice of the jurisdictional proceeding when DHS notified her on May 2 by certified mail of its intent to initiate foster care proceedings and establish wardship. *See* ORS 419B.639(2)(a) (requiring DHS to "promptly send notice of the proceeding" rather than notice of each hearing); *see also* 25 USC § 1912(a) (requiring notice "of the pending proceedings and of [a parent's] right of intervention"); *Dept. of Human Services v. C. M. H.*, 368 Or 96, 105, 486 P3d 772 (2021) ("proceedings under [ORS chapter 419B] are commonly referred to as 'dependency proceedings'").

Although the notice that mother received indicated that the related hearing was scheduled for May 25, the court rescheduled the jurisdictional trial for June 13 to accommodate mother's ICWA/ORICWA request for 20 additional days. That rescheduling did not require a renewed ICWA/ORICWA notice. When a court grants a parent's 20-day extension request, it is based on a parent having already received ICWA/ORICWA-compliant notice of the proceeding, which in this case occurred on May 2. *See* ORS 419B.639(5)(a) ("Upon request, the court shall grant the Indian child's parent * * * up to 20 additional days from the date upon which [ORS 419B] notice was received * * * to prepare for participation in the hearing."); 25 USC § 1912(a) (same). Thus, when the court granted mother's request

---

[4] ICWA includes similar requirements as to both formal notice and active efforts. *See* 25 USC § 1912(a) ("the party seeking the foster care placement of * * * an Indian child shall notify the parent * * * by registered mail with return receipt requested, of the pending proceedings" requiring notice to the parent of an Indian child); *see also* 25 USC § 1912(d) ("Any party seeking to effect a foster care placement of * * * an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."); 25 USC § 1914 (allowing the court to vacate the proceedings if those two requirements are not met).

for an additional 20 days to prepare for the jurisdictional hearing, after receiving proper notice of the proceedings, DHS was not then required to send a new ICWA/ORICWA notice incorporating the rescheduled June 13 hearing date. Because there was no violation of the ICWA/ORICWA notice requirements, the juvenile court did not err in refusing to vacate the proceedings on that ground.

We turn to mother's active-efforts challenge under ICWA/ORICWA. She argues that the court was required to grant her motions because, as of the date of those motions, DHS had failed to make "active efforts" to prevent the breakup of her family by failing to provide regular visits with A and L. We, however, are not persuaded by that argument.[5] Under ORICWA—ORS 419B.651(2)(a)—a court is required to vacate the proceedings upon a violation of a requirement in ORS 419B.645. Here, the relevant ORS 419B.645 requirement was that a court hearing a dependency case involving an Indian child must make an "active efforts" determination based on a higher than "reasonable efforts" standard. *See* ORS 419B.645(2), (3). The record shows that the court made the required active-efforts determination during each shelter hearing, so there was no violation of ORICWA based on failing to make the determination.

Moreover, the evidence presented to the court supports its findings of fact and legal conclusion that DHS made active efforts, despite mother not having regular visits with her children. The court's determination was based on evidence that was "document[ed] in detail in writing and on the record" and included Davis's affidavits and testimony regarding DHS's efforts to contact representatives of A's and L's tribe, provide a visitation plan, and identify adequate services to mother; those efforts constitute active efforts under ORICWA. *See* ORS 419B.645(4), (5) (listing those actions as active efforts). The court's determination also considered evidence as to why some of those active efforts were not successful, including evidence of scheduling issues—that is, the 12- to 14-hour drive to the clinic where mother was residing and the clinic's lack of qualified staff

---

[5] Mother's active-efforts argument refers only to the three shelter hearings prior to the June 13 jurisdictional trial, so we consider the timeline up to that point.

to supervise visits—that prevented A and L from visiting mother more often. Accordingly, there was no violation of the ORS 419B.645 active-efforts requirement and the court was not required to grant mother's motions on that ground.

Our analysis of mother's active-efforts argument under ORICWA obviates the need to conduct a separate analysis of that same argument under ICWA because the relevant provisions under both ORICWA and ICWA are similar. *Compare* ORS 419B.651(2)(a) (regarding vacation of the proceedings upon a violation of ORS 419B.645) *and* ORS 419B.645(2), (3) (regarding active efforts requirements) *with* 25 USC § 1914(a) (regarding vacation of the proceedings upon a violation of 25 USC § 1912) *and* 25 USC § 1912(d) (requiring DHS to "satisfy the court that active efforts have been made *** to prevent the breakup of the Indian family and that these efforts have proved unsuccessful").

Motion to dismiss appeal as moot denied; affirmed.