270                    January 2, 2025                    No. 10

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of X. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. S.,
*Appellant.*

Benton County Circuit Court
22JU04120; A183997

Locke A. Williams, Judge.

Argued and submitted November 18, 2024.

Kyle Sessions, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services/Oregon Public Defense Commission.

Stacy M. Chaffin, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Hellman, Presiding Judge, Lagesen, Chief Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Affirmed.

**MOONEY, S. J.**

This is a juvenile dependency case in which mother appeals the permanency judgment that changed the case plan for her 17-year-old daughter, X, from reunification to another planned permanent living arrangement (APPLA).[1] Mother assigns error to the juvenile court's decision to change the plan away from reunification. More specifically, mother argues that the trial court erred by concluding that the Department of Human Services (DHS) made reasonable efforts toward the plan of reunification and that mother's progress toward reunification was insufficient. Mother also argues that the trial court improperly relied on facts extrinsic to the established bases of jurisdiction. We affirm.

We use the standard of appellate review that applies to the appeal of a permanency judgment:

> "We review findings of fact—such as what DHS did or did not do—for any evidence. *Dept. of Human Services v. J. F. D.*, 255 Or App 742, 744, 298 P3d 653 (2013). We review conclusions of law—such as whether the facts support the conclusion that DHS made reasonable efforts—for legal error. *Dept. of Human Services v. R. W.*, 277 Or App 37, 39, 370 P3d 543 (2016). We 'view the evidence in the light most favorable to the court's disposition to determine if it supports the court's legal conclusions.' *Dept. of Human Services v. S. J. M.*, 364 Or 37, 40, 430 P3d 1021 (2018). We draw the facts from the record that was before the juvenile court when it changed the permanency plan."

*Dept. of Human Services v. T. F.*, 331 Or App 682, 684, 548 P3d 510 (2024) (footnote omitted). Further, "[w]hether a juvenile court erred by relying on facts extrinsic to a jurisdictional judgment is a legal question that we review for errors of law." *Dept. of Human Services v. T. L.*, 287 Or App 753, 755, 403 P3d 488 (2017) (internal quotation marks omitted). We provide the following summary of the underlying and procedural facts in accordance with those standards, providing only those necessary to explain our decision.

---

[1] APPLA is a permanency plan that the juvenile court may order under ORS 419B.476(5)(h) that provides for a "stable secure living arrangement for a child who has reached the age of 16 or young adult that includes building relationships with significant people in the child's life that may continue after substitute care." OAR 413-070-0000(6).

When X was 15-years-old, she disclosed to mother that she was being sexually abused by mother's domestic partner. Mother did not believe X and a physical altercation between mother and X ensued. X left her mother's home, called the police, and was removed from mother's care by DHS. The juvenile court asserted jurisdiction over X at the conclusion of a contested trial on four bases: mother (1) failed to protect X from sexual abuse, (2) lacks safe parenting skills, (3) exposed X to harm in response to X's disclosure of sexual abuse, and (4) emotionally abused X resulting in serious emotional harm likely to be repeated. X was made a ward of the court and placed in the legal custody of DHS. Mother was ordered to participate in, and DHS was ordered to provide, a number of services, including a psychological evaluation and recommended treatment, non-offending parent treatment, parent education, a family-based violence assessment and recommended treatment, and visitation with X as directed by DHS. DHS provided, and mother participated in, a psychological evaluation, basic parent education and training sessions, family sexual assault education, anger management training courses, counseling, contact with X's counselor, and supervised visits with X.

The visits between mother and X did not go well in large part due to mother's insistence that although X may have been abused, she had not been abused by mother's partner. Mother was dismissive of, and often rude to, X during their interactions. During a visit in March 2023, in reference to the sexual abuse, X asked mother, "why didn't you believe me?" Mother did not answer that question and X left the visit. When asked how she might answer similar questions in the future, mother stated that she would never answer such questions. The prognostic conclusion of mother's psychological evaluation was that successful reunification would require "a slow-growing approach" that would depend on mother's willingness to "suspend her own belief" about X's sexual abuse report and mother's ability to prioritize X over all mother's other relationships. After repeating the family sexual assault education course, mother continued to express disbelief about X's report of sexual abuse. X engaged in regular therapy sessions, but she was not willing to engage in family therapy with mother, stating that

she did not trust her mother. DHS encouraged X to attend counseling and visitation with mother, but X declined. DHS encouraged mother to write a letter to X as a way of opening the door to further communication, but mother declined.

Mother argues, essentially, that DHS's efforts do not qualify as reasonable because it "did not provide any services aimed at overcoming [X]'s alienation and unwillingness to reunify with mother." More specifically, mother argues that DHS "never initiated family therapy" and that it "stopped all visits entrenching [X]'s alienation." Mother contends that the evidence established only that she and X were "estranged" and that her own progress cannot qualify as insufficient because estrangement was neither an express nor a fairly implied basis of jurisdiction. DHS contends, and the juvenile court concluded, that despite mother's participation in the services DHS made available to her, she had not demonstrated a willingness to suspend her disbelief of X's sexual abuse report in order to allow family therapy to occur, even though mother was aware that her unwillingness meant that X would not attend such therapy sessions. The juvenile court concluded that given X's age, mother's unwillingness to suspend her disbelief meant that successful reunification was not likely to occur within a reasonable period of time.

Agency efforts are reviewed by focusing on DHS's conduct, measuring the reasonableness of those efforts "through the lens of the adjudicated bases for jurisdiction," *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017) (internal quotation marks omitted), and basing the review "on the totality of the circumstances." *Dept. of Human Services v. M. K.*, 257 Or App 409, 411, 306 P3d 763 (2013). As we assess the reasonableness of the agency's efforts, "the child's health and safety [are] the court's 'paramount concerns.'" *Dept. of Human Services v. C. S. C.*, 303 Or App 399, 405-06, 463 P3d 582 (2020) (quoting ORS 419B.476(2)(a)). It is incumbent upon DHS to provide services that could assist the parent in "fixing what is broken so the family can be reunited." *Dept. of Human Services v. P. W.*, 302 Or App 355, 358, 460 P3d 1044 (2020). Parental progress toward safe family reunification is measured by

what the parent has done to ameliorate the circumstances that led to juvenile court jurisdiction. ORS 419B.476(2)(a); *Dept. of Human Services v. K. G. T.*, 306 Or App 368, 376, 473 P3d 131 (2020) (explaining that DHS efforts must "give the parent the opportunity to ameliorate the bases for jurisdiction" (internal quotation marks omitted)). The reasonableness of agency efforts and the sufficiency of parental progress are legal conclusions that are "heavily fact-driven." *Dept. of Human Services v. Y. B.*, 372 Or 133, 149, 546 P3d 255 (2024). As already mentioned, we review those conclusions for legal error.

We have considered mother's arguments and reviewed the record. We conclude that the juvenile court did not err in its reasonable efforts finding or in its parental progress finding and, thus, it did not err in changing the permanency plan from reunification to APPLA. DHS provided mother with the services ordered by the juvenile court, and by all accounts, mother participated in those services. And yet at the time of the permanency hearing, mother had progressed no further toward the goal of safe reunification with X than that. Despite participation in services, mother continued to disbelieve X's disclosures of abuse and she failed to demonstrate that she could prevent further emotional harm to X. *See State ex rel Dept. of Human Services v. S. L.*, 211 Or App 362, 372, 155 P3d 73 (2007) ("Mere participation in services *** is not sufficient to establish adequate progress toward reunification.").

Finally, mother contends that the juvenile court impermissibly relied on mother and X's estrangement to change the permanency plan to APPLA, contending that *estrangement* was a fact extrinsic to the jurisdictional bases. We disagree. As noted above, mother did not make sufficient progress toward ameliorating the bases of jurisdiction. That lack of parental progress distinguishes this case from *T. L.* There, the juvenile court changed the permanency plan away from reunification based "almost entirely" on the estrangement that had developed between the child and the father, even though it was undisputed that father had made sufficient progress in ameliorating the sole basis of jurisdiction: his substance abuse. 287 Or App at 755, 765. Because

estrangement was not fairly implied by that jurisdictional basis, we held that the trial court erred in changing the plan on that basis. *Id.* at 768.

Like *T. L.*, estrangement is not itself a basis of jurisdiction here. Also like *T. L.*, mother and X reached a point over the course of this case where contact with each other stopped. But whether that lack of contact is character-ized as a period of estrangement or otherwise, the juvenile court changed the permanency plan at least in part because the mutual resistance to contact between mother and her 17-year-old daughter presented a barrier to reunification. The record supports that. Indeed, requiring contact between mother and X before mother is ready to suspend her disbe-lief would be contrary to X's health and safety. The court did not err on this record when it changed the case plan away from reunification to APPLA.

Affirmed.