612 October 29, 2025 No. 956

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of D. Q. R., aka D. L. Q.-R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

D. Q. R.,
aka D. L. Q.-R.,
*Respondent,*

*v.*

D. D. Q.-R.,
*Appellant.*

Umatilla County Circuit Court
24JU01544; A187242

Robert W. Collins, Jr., Judge.

Submitted September 26, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent Department of Human Services.

Erica Hayne Friedman and Youth, Rights & Justice filed the brief for respondent D. Q. R.

Before Tookey, Presiding Judge, Egan, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

In this juvenile dependency case, father appeals a permanency judgment continuing the plan of reunification for his child, D. On appeal, father raises one assignment of error, arguing that the juvenile court erred in determining that the Oregon Department of Human Services (ODHS)'s efforts to reunify the family were "reasonable efforts." In response, ODHS argues that father's argument is unpreserved, because his argument in the juvenile court was related to ODHS making "diligent efforts" to place the child with a relative as required under ORS 419B.192, and not "reasonable efforts *** to make it possible for the ward to safely return home," as required under ORS 419B.476(2)(a). Further, on the merits, ODHS argues "the record supports the trial court's finding that ODHS made reasonable efforts to facilitate reunification."[1]

Assuming without deciding that father preserved his argument for appeal, we conclude that the trial court did not err in determining that ODHS's efforts were reasonable, and we affirm.[2]

At the outset, prior to turning to the standard of review and our analysis, we note that the jurisdictional bases upon which the juvenile court found D within the juvenile court's jurisdiction included (1) that "father subjected [D's] sibling to inappropriate physical discipline that resulted in physical injury to the sibling, placing [D] at risk of harm," and (2) that "[w]hile in the custody of the father, [D's] sibling suffered a non-accidental injury that is at variance with the explanation given by the father, placing [D] at risk of harm." We further note that father and mother

_____

[1] D also appears on appeal, but he "takes no position on the merits of father's contention that the juvenile court erred in ruling that the department made reasonable efforts."

[2] Although we assume without deciding that father preserved his argument for appeal, we note that whether the department made *diligent efforts* to place a child with relatives is a distinct legal question from whether the department made *reasonable efforts* to make reunification possible. *Compare* ORS 419B.192(2) (requiring the department to make "diligent efforts" to place the child or ward with relatives and to report those efforts to the court), *with* ORS 419B.476(2) (requiring the juvenile court to determine at a permanency hearing whether the department made "reasonable efforts *** to make it possible for the ward to safely return home"). On appeal, we understand father to be arguing the latter.

are currently residing with father's grandparents, which is where they were residing with D and D's sibling at the time that father subjected D's sibling to "inappropriate physical discipline that resulted in physical injury to the sibling" and father gave an explanation for the injury that was "at variance" with how the injury actually occurred.

We review "the juvenile court's legal conclusions for errors of law, and we view the evidence in the light most favorable to the court's disposition to determine if it supports the court's legal conclusions." *Dept. of Human Services v. S. J. M.*, 364 Or 37, 40, 430 P3d 1021 (2018). When "a child's permanency plan is reunification, the juvenile court must determine at each permanency hearing 'whether [ODHS] has made reasonable efforts * * * to make it possible for the ward to safely return home.'" *Dept. of Human Services v. K. G. T.*, 306 Or App 368, 374, 473 P3d 131 (2020) (quoting ORS 419B.476(2)(a)). Reasonable efforts include offering the parents services to "focus on fixing what is broken so the family can be reunited." *Dept. of Human Services v. P. W.*, 302 Or App 355, 358, 460 P3d 1044 (2020). The juvenile court evaluates whether ODHS made reasonable efforts under the totality of the circumstances, and in doing so it may take into account a parent's failure to cooperate with ODHS. *See Dept. of Human Services v. M. K.*, 257 Or App 409, 418, 306 P3d 763 (2013) (noting that to answer the question of "whether [ODHS's] efforts have been reasonable[,] * * * a court must consider the totality of the circumstances"); *Dept. of Human Services v. R. W.*, 277 Or App 37, 43-44, 370 P3d 543 (2016) ("a parent's failure to sign releases or unwillingness to engage in services can hamper [ODHS's] efforts;" however, that evidence alone does not excuse ODHS from making a reasonable determination as to that parent).

On appeal, as noted, father argues that the juvenile court erred in concluding that the ODHS's efforts to reunify the family were "reasonable efforts." Specifically, as we understand father's argument, he contends that ODHS's efforts were not reasonable because ODHS should have placed D with father at father's grandparent's home. As father sees it, ODHS improperly relied on "its suspicions and own administrative policies to dismiss categorically the

possibility of reunifying [D] with father in great-grandparents' home."

We disagree with father that ODHS's efforts were not "reasonable efforts" within the meaning of ORS 419B.476(2). Although father's grandparents had applied to be in-home safety service providers to support an in-home safety plan with father resuming care of D, among other difficulties with father's grandparents performing that role at the time of the hearing were (1) that father had not signed the releases of information that were necessary to allow a conversation between ODHS and father's grandparents about what father's grandparents would need to do concerning D's safety and whether they were willing to perform that role; (2) father "adamantly" rejected the need for safety planning as a step toward reunification; and (3) father had not yet started to engage in anger-management services.

Further, ODHS has taken a variety of measures with regard to father to support the family's reunification. ODHS has coordinated parent training for father, referred father to anger-management counseling and housing resources, provided father with gas vouchers, and supervised father's weekly visitation with D.

In sum, given the services provided and offered to father, and father's lack of cooperation and understanding of the need for safety planning, the juvenile court did not err when it determined that the agency had made reasonable efforts. Thus, we affirm.

Affirmed.