No. 644 July 16, 2025 29

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of F. K. L., aka F. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. C. L.,
*Appellant.*

Multnomah County Circuit Court
23JU05288;
Petition Number 114929;
A186130 (Control), A186448

Morgan Wren Long, Judge. (Judgment September 4, 2024)

Francis G. Troy II, Judge. (Judgment December 10, 2024)

Submitted May 28, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sean Connor, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Father appeals from two consolidated judgments establishing dependency jurisdiction over his son, F. Father assigns error solely to the juvenile court's legal conclusion that Oregon Department of Human Services (ODHS) made reasonable efforts under ORS 419B.340(1) to make it possible for F to safely return home.[1] Specifically, father argues that that the department did not meet its burden because it did not sufficiently investigate individuals that father, in light of his incarceration, identified as potential placement options for F. As we will explain below, we disagree with the contention that the evidence was not sufficient for the court to conclude that ODHS met its burden and we affirm.

Father's child, F, tested positive for amphetamines at birth and was placed in substitute care in 2020. F was eventually returned to father, but in 2023, ODHS became involved with the family again when it received a report of abuse of F by father. Father was arrested around the same time for a probation violation, and the babysitter for F tested positive for drugs. ODHS took F into custody and filed a dependency petition in October 2023, alleging that F was in danger.

After removing F from father's care, ODHS attempted to place F with father's wife, but she refused to engage in any drug testing. Father provided ODHS with the names of other family members who might be able to provide care for F. ODHS spoke with one individual who said they would call ODHS back, but they never spoke again. ODHS left voicemails with the other suggested contacts, but did not state that ODHS would be requesting placement. None of the suggested contacts responded to the voicemails. F was placed in substitute care in Coos Bay because F had a relationship with the resource family, despite father's repeated requests that F be placed closer to Portland.

---

[1] The juvenile court found F to be within its jurisdiction as related to father on the following five bases: (1) F tested positive for controlled substances while in the custody of father; (2) father has committed domestic violence in the presence of F; (3) father's violent and volatile behavior endangered F; (4) father's failure to comply with the terms of probation or parole and periods of incarceration interfere with his ability to safely parent F; and (5) father's substance abuse interferes with his ability to safely parent F. Father has not challenged those bases for jurisdiction. Additional jurisdictional bases were established with respect to mother, who is not a party to this appeal.

The juvenile court held a hearing on the petition in September 2024, took the matter under advisement, and issued an oral ruling on December 5, 2024, and a written jurisdictional judgment on December 10, 2024. Father timely appealed.

Under ORS 419B.340(1), if the juvenile court awards legal custody to ODHS and the child has been removed prior to the entry of the order, the order shall include a determination "whether [ODHS] has made reasonable *** efforts to make it possible for the ward to safely return home." We review a juvenile court's determination that ODHS made reasonable efforts for legal error, and we are bound by the juvenile court's factual findings if there is any evidence supporting them.[2] *Dept. of Human Services v. J. F. D.*, 255 Or App 742, 749, 298 P3d 653 (2013).

Father's argument rests on two premises: first, that ODHS's response to his offer of several potential family resources was insufficient, and second that ODHS failed to place F close enough to him during his incarceration, which weakened his ability to make progress with F. We disagree with father's assessment of ODHS's efforts. When we review for reasonable efforts, we do so in the context of the needs of the child and family at that time. *Dept. of Human Services v. J. F. D.*, 255 Or App 742, 749, 298 P3d 653 (2013). Here, ODHS placed F with a resource parent that had already formed an attachment with F. Considering the limitations on visitation and the difficulty developing father's relationship with F while father was incarcerated, it was not unreasonable to place the child with a family that he had a bond with.

Looking at ODHS's efforts in investigating father's other suggested family placements, we note that the juvenile court's fact findings are supported by evidence in the record. ODHS did begin vetting father's wife to be a resource, but she refused to cooperate with drug testing. In light of F's

---

[2] ODHS argues that father failed to preserve his arguments for appeal. However, we reject that argument because we read the record consistently with father's interpretation that counsel argued that the evidence was insufficient during a proceeding in September 2024, the juvenile court took the matter under advisement, and did not receive new evidence at the December 5, 2024, appearance when it issued its oral ruling. We thus conclude that the issue is preserved.

history of testing positive for amphetamines, along with the information that a babysitter for the child had recently tested positive for drugs, it was not unreasonable for ODHS to require father's wife to provide proof that she could safely parent the child. ODHS also called the other people father suggested, but ODHS did not receive any calls back, including from one person they spoke with who told ODHS they would call them back. While not herculean, the efforts were more substantial than those in other cases where ODHS abandoned reunification efforts or included unreasonable restrictions on assisting incarcerated parents with finding parental resources. *See, e.g., Dept. Of Human Services v. M. C. C.*, 303 Or App 372, 463 P3d 592 (2020) (reversing a finding of reasonable efforts when the father had identified a potential resource but ODHS would not consider the suggestion unless the permanency plan was changed from reunification); *J. F. D.*, 255 Or App at 748 (concluding that ODHS did not make reasonable efforts when the only effort made in seven months was to request a home study in another state where the father was residing, without confirming that the study was actually performed). We conclude that the juvenile court did not err in determining that ODHS's efforts were reasonable, and, thus, we affirm.

Affirmed.