314                    June 3, 2026                    No. 498

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of W. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. G.,
*Appellant.*

Douglas County Circuit Court
22JU04250; A189019

Ann Marie Simmons, Judge.

Submitted April 22, 2026.

Aron Perez-Selsky filed the brief for appellant.

Dan Rayfield, Attorney General, Paul L. Smith, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Mother appeals a judgment that changed the permanency plan from reunification to tribal customary adoption for her child, W. W is a member of the Cow Creek Band of Umpqua Tribe of Indians and is an Indian child subject to the federal Indian Child Welfare Act (ICWA) and the Oregon Indian Child Welfare Act (ORICWA). Mother challenges the juvenile court's ruling that the Oregon Department of Human Services (ODHS) had made active efforts to reunify mother with W. We are bound by the juvenile court's express and implied factual findings as to what efforts ODHS made if there is evidence in the record to support them. *Dept. of Human Services v. C. H.*, 373 Or 26, 48-49, 559 P3d 395 (2024). Whether those efforts qualify as "active" is a legal conclusion that we review for errors of law. *Dept. of Human Services v. A. C. S. G.*, 328 Or App 191, 196, 536 P3d 1075 (2023). Because we conclude that the juvenile court correctly found that ODHS made active efforts, we affirm.

When the child is an Indian child and the permanency plan at the time of the permanency hearing is reunification, a juvenile court is required to determine whether ODHS made active efforts to make it possible for the child to safely return home to the parent before changing the permanency plan to something other than reunification. ORS 419B.476(2)(a). Whether ODHS's efforts are active must be considered "in light of the bases for [dependency] jurisdiction identified in the juvenile court's judgment." *See C. H.*, 373 Or at 50 (so holding in the context of assessing whether DHS made "reasonable" efforts). Active efforts are those that are "affirmative, active, thorough, timely and intended to maintain or reunite an Indian child with the Indian child's family." ORS 419B.645(1). Active efforts "require a higher standard of conduct than reasonable efforts," ORS 419B.465(3), and must, under certain circumstances, include "assisting the Indian child's parent *** through the steps of a case plan and with accessing or developing the resources necessary to satisfy the case plan," ORS 419B.645(4)(b). In addition, active efforts must be "tailored to the facts and circumstances" of each individual case. ORS 419B.645(4)(e).

Having reviewed the record, we conclude that the juvenile court did not err in determining that ODHS had made active efforts to reunify mother with W. Mother was assessed as likely suffering from a neurodevelopmental disorder associated with prenatal alcohol exposure, an intellectual developmental disability, and post-traumatic stress disorder. The juvenile court found that W was within its jurisdiction because mother had impulse control issues that interfered with her ability to safely parent W and needed the assistance of ODHS to learn parenting skills in order to safely parent W.

As the juvenile court described in a lengthy letter opinion, ODHS made "extensive" efforts over several years to reunite mother and W:

> "[ODHS's] efforts covered a gamut of services including housing, parent education and coaching, health and wellness, relationships, and parent child interactions and discipline. Besides [ODHS], service providers included Safe Haven both when mother resided there and in aftercare for mother, OPTIONS, Family Development Center, Just Cares, a home health nurse, parent child interactive therapy, a parent child evaluation, and a neuropsychological evaluation for mother. After Mother moved from the Safe Haven, [ODHS] continued to seek services despite having exhausted services known to [ODHS]."

The court further found that "[a]t one point while living in Safe Haven, which provided essentially 24/7 safety service providers, [ODHS] estimated 12 or more service providers had ongoing contact with mother and child." Those efforts were tailored to mother's specific needs and designed to support and assist her with learning the skills necessary to parent W. Although mother on appeal contends that ODHS stopped providing services after her neuropsychological evaluation in March 2025, the record shows that ODHS continued offering services to mother beyond that time, including a referral for a parenting mentor, visitation with W, payment of mother's housing costs, and attempts to find a service that could provide "the very long term 24/7 stability necessary" to allow mother to parent W. From that record, the juvenile court did not err in finding that ODHS

made active efforts and changing the permanency plan from reunification to tribal customary adoption.

Affirmed.